THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v. JOSEPH M. EMRICH, Defendant-Appellee.

First District (2nd Division)   No. 84—0285

Opinion filed March 26, 1985.—Rehearing denied April 23, 1985.

Richard M. Daley, State's Attorney, of Chicago (Michael E. Shabat, Timothy J. Frenzer, and Mary Louise Norwell, Assistant State's Attorneys, of counsel), for the People.

Stephen K. Bell, of Wheaton, for appellee.

JUSTICE BILANDIC delivered the opinion of the court:

At the conclusion of a suppression hearing, the trial court held that the results of a chemical analysis performed on a sample of defendant Joseph M. Emrich's blood were inadmissible. On appeal, the State contests the propriety of this holding pursuant to Supreme Court Rule 604(a)(1) (87 Ill. 2d R. 604(a)(1)).

Following an August 22, 1983, automobile collision, defendant was taken to Henrotin Hospital, where Tereseta Easterling, a medical technologist, drew three blood samples at approximately 2:30 a.m. Each blood sample was drawn directly from defendant into a sterile vacuum container. One of the containers had a "green top," meaning that the sample within contained the anticoagulant heparin; the two remaining containers had "red tops," meaning that the samples within did not contain an anticoagulant or preservative. Easterling then labeled the containers and proceeded to test the "green top" sample for alcohol content in an ACA centrifuge instrument. This particular analysis involved first separating out the blood cells, and then measuring the alcohol content of the remaining plasma. Easterling conceded, however, that she was not certified to perform this analysis by the Illinois Department of Public Health.[1]

---

[1] No testimony concerning the results of Easterling's test was proffered by the State during the course of the proceedings below; no issue has therefore been raised with respect to the validity of these results.

At approximately 4:45 a.m. on August 22, Officer John Simon of the Chicago police department left Henrotin Hospital with the two "red top" samples of defendant's blood that were given to him by Easterling. Officer Simon took these samples to the 18th District police station where, following an inventory, he turned them over to Officer Norford Rejewski, a crime lab technician, at 6:53 a.m. that morning. Officer Rejewski gave Officer Simon a receipt for the containers, put them into an envelope and placed them into a "refrigerator and microsection."

Veronica Rotterman, a toxicology chemist employed by the Illinois Department of Public Health (Department), received a manila envelope from the Chicago police department at approximately 8:20 a.m. on August 22. This envelope contained two test tubes with red rubber stoppers containing approximately six milliliters of defendant's blood. Rotterman thereupon wrote up a description of the evidence and how it had arrived, signed a police officer's receipt, and put one of the samples into a storage box that was locked into an evidence refrigerator. Rotterman then proceeded to perform an alcohol analysis on the second sample of defendant's blood. This particular test involved the gas chromatograph direct injection method, whereby a blood sample is injected into the instrument and the alcohol content is recorded on a computer printout graph. Although Rotterman determined by her sense of smell that defendant's unpreserved blood sample had not degenerated or deteriorated, she later admitted that the standards of her Department required that the blood sample have an anticoagulant preservative in it.

On August 26, 1983, defendant was charged by indictment with two counts of reckless homicide (Ill. Rev. Stat. 1981, ch. 38, par. 9—3), and one count of driving while under the influence of an intoxicating liquor (Ill. Rev. Stat. 1981, ch. 95½, par. 11—501(a)). Defendant filed a motion for discovery on September 13, 1983, which requested, among other things, "[t]he blood sample taken from the Defendant on the night of the alleged occurrence [sic]." Thereafter, on October 11, 1983, defendant filed a motion to suppress the results of any analysis performed on the samples of his blood. Count I of this motion dealt with an alleged nonconsensual procurement of said evidence; count II concerned the State's failure to supply the requested blood sample for independent analysis.

On January 19, 1984, a hearing was held on count II of defendant's motion to suppress. Richard Swiatek, a manager of chemistries and toxicology working at Damen Clinical Laboratories, was called to testify as an expert witness for the defense. When counsel for defend-

ant tendered Swiatek as an expert in chemical analysis, the State declined to question his degree of expertise in this field. In essence, Swiatek indicated that he had not received defendant's blood sample from the State until October 19, 1983. Swiatek further testified that this sample did not contain an anticoagulant or preservative. As such, it was his opinion that the then two-month-old sample could not be accurately tested for "whole blood alcohol concentration." Had defendant's blood sample contained the proper anticoagulant and preservative, it was Swiatek's opinion that only then could an accurate blood-alcohol determination have been made.

The trial court granted defendant's motion to suppress, reasoning that "the State failed to properly maintain the blood sample and allowed the spoilation of the blood sample thereby precluding the defendant from obtaining an independent analysis ***." The court also noted that the alcohol analysis in question was not performed in accordance with the standards and procedures adopted by the Department. It is the propriety of the trial court's suppression order which the State now contests on appeal.

I

■ The threshold issue is whether affirmance is warranted in view of the undisputed failure to comply with the statutes and regulations dealing with chemical analysis of blood for alcohol or drug content.

The controlling statute in this case is section 11—501.2 of the Illinois Vehicle Code which provides, in pertinent part, that: "Chemical analyses of the person's blood, *** to be considered valid under the provisions of this Section shall have been performed according to standards promulgated by the Department of Public Health in consultation with the Department of Law Enforcement ***." (Ill. Rev. Stat. 1983, ch. 95½, par. 11—501.2(a)(1).) The standards in question have not been made a part of the record on appeal. The trial court apparently had a copy of these standards before it, but they are before this court only as an appendix to the State's brief. Without question, a reviewing court may take judicial notice of such standards. *People v. Palmer* (1983), 114 Ill. App. 3d 454, 458, 448 N.E.2d 1005, citing *Pearce v. Illinois Central Gulf R.R. Co.* (1980), 89 Ill. App. 3d 22, 411 N.E.2d 102.

The Department standard most relevant to the case at bar is found in section 11, "STANDARDS AND PROCEDURES FOR WITHDRAWING OF BLOOD AND/OR URINE SAMPLES FOR CHEMICAL ANALYSIS OF ALCOHOL OR OTHER DRUG CON-

TENT." Rule 11.01(d)(3) of section 11 provides that: "When vacuum-type blood-collecting containers are used as primary collecting tubes, two (2) tubes should be collected each containing an anti-coagulant/preservative which will not interfere with the intended analytical method." Illinois Department of Public Health, Standards and Procedures for Testing for Alcohol and/or Other Drugs by Breath, Blood and Urine Analysis, Rule 11.01(d)(3), at 17 (1982).

It is clear that those responsible for the processing of defendant's blood failed to meet the Departmental standard for withdrawing of blood for chemical analysis of alcohol content. Indeed, as the State's expert, Veronica Rotterman, admitted in open court: "[Defendant's] blood samples had no anti-coagulant in them \*\*\*." This was evident despite Rotterman's acknowledgement that, "[her] agency, the Illinois Department of Public Health, *require[s]* that the blood sample have anti-coagulant preservative in it." (Emphasis added.)

The State has conceded that "[t]he blood samples below \*\*\* did not contain an anti-coagulant/preservative." That, of course, was why, as the State also concedes, "the blood contained in the sample was clotted at the time of examination \*\*\*."

The standard in question could either have been met or not. An anticoagulant could have been put in all three of defendant's blood samples, but it is quite obvious that such was not the case here. As a result, the State's contention that it substantially complied with the Department's preservation-of-blood standard is without merit.

Further argument is advanced by the State that the word "should," as used in the Department's Rule 11.01(d)(3), connotes no more than an obligation of expediency. What the State has failed to acknowledge, however, is the uncontroverted fact that this particular "Rule" was promulgated by the Department as a "STANDARD" for withdrawing of blood for chemical analysis of alcohol content. (Illinois Department of Public Health, Standards and Procedures for Testing for Alcohol and/or Other Drugs, by Breath, Blood and Urine Analysis sec. 11, at 16 (1982).) As such, compliance was *mandatory* in view of the legislature's directive in section 11—501.2(a)(1) of the Illinois Vehicle Code that: "Chemical analyses of the person's blood, \*\*\* to be considered valid under the provisions of this Section *shall have been performed* according to standards promulgated by the Department of Law Enforcement by an individual possessing a valid permit issued by that Department for this purpose." (Emphasis added.) Ill. Rev. Stat. 1983, ch. 95½, par. 11—501.2(a)(1).

Furthermore, a reading of the prefatory comment to Rule 11.01 indicates more than a mere advisory intent on the part of the Depart-

ment:

> "Blood Collection. When a person is arrested and the arresting officer requests a blood test to determine the amount of alcohol or other drugs present, the blood sample *shall be collected* according to the following procedure(s): ***." (Emphasis added.)

Section 11—501.2 of the Illinois Vehicle Code "applies equally to reckless homicide and DWI offenses alike ***." *People v. Murphy* (1984), 124 Ill. App. 3d 695, 700, 464 N.E.2d 853.

A plain reading of this section, effective at the time of the instant chemical analysis, reveals that the legislature did not intend to limit its application strictly to driving-while-under-the-influence cases: "(a) Upon the trial of any civil or criminal action or proceeding arising out of an arrest for an offense as defined in Section 11—501 ***." (Ill. Rev. Stat. 1983, ch. 95½, par. 11—501.2(a).) Driving while under the influence of an intoxicating liquor is an offense defined in section 11—501(a)(2) of the Illinois Vehicle Code. Defendant here was charged with one count of this offense and with two counts of reckless homicide—the commission of which allegedly arose out of his having driven a motor vehicle while under the influence of an intoxicating liquor.

The mandatory language contained in section 11—501.2(a)(1) is, therefore, applicable to the facts of this case.

In both *People v. Murphy* (1984), 124 Ill. App. 3d 695, 464 N.E.2d 853 and *People v. Palmer* (1983), 114 Ill. App. 3d 454, 448 N.E.2d 1005, the State's argument that the certification requirement of section 11—501.2(a)(1) should be ignored was rejected. Accordingly, the trial court's exclusion in each case of blood test results due to the absence of a Department permit was affirmed. Likewise, we reject the State's argument here that the Department's standard with respect to the preservation of blood samples should also be ignored. The reasons for the evidentiary restrictions set forth in section 11—501.2(a)(1), as well as the dangers inherent in their disregard, do not need elaboration. There is no dispute that the blood samples in question were never preserved with an anticoagulant. Consequently, the chemical analysis of these samples was *not* "performed according to the standards promulgated by the Department ***." (Ill. Rev. Stat. 1983, ch. 95½, par. 11—501.2(a)(1).) Because the mandatory language of section 11—501.2(a)(1) applies equally to reckless homicide and driving-while-under-the-influence offenses alike, it is our conclusion that the results of the chemical analysis were properly ruled inadmissible.

II

As a final argument, the State contends that an inadequate foundation was laid to qualify defendant's expert "in the area of forensic analysis, the analysis of alcohol content of the blood." This question, however, has not been preserved for review.

During the direct examination of Mr. Swiatek, an objection was made by the prosecutor that defense counsel was "going into the substance of this case and I don't know if counsel has finished in his examination of establishing that [Swiatek] is an expert." Thereafter, the defense counsel tendered Swiatek as an expert in the field of chemical analysis. The trial court then asked the State if it "wish[ed] to inquire of the witness as to his expertise or degree of expertise in the field to which he is about to testify?" The prosecutor responded, "No, Judge." Having failed to question, much less object to, Swiatek's qualifications as an expert witness during the proceedings below, we consider the State's argument with regard to this issue as waived for purposes of appellate review. See *People v. Stewart* (1984), 105 Ill. 2d 22, 50.

For the reasons set out herein, the judgment of the circuit court of Cook County is hereby affirmed.

Affirmed.

STAMOS and PERLIN, JJ., concur.