764 P.2d 113

**STATE of Idaho, Plaintiff–Respondent,**

v.

**Vernon V. BELL, Defendant–Appellant.**

**No. 16725.**

Court of Appeals of Idaho.

Nov. 1, 1988.

Dan J. Rude, Coeur d'Alene, for defendant-appellant.

Jim Jones, Atty. Gen., Myrna A.I. Stahman, Deputy Atty. Gen., for plaintiff-respondent.

SWANSTROM, Judge.

Vernon Bell was found guilty by a jury of aggravated driving while under the influence of alcohol. The charge arose from an automobile accident involving Bell which occurred in April 1986 on Interstate 90 in Kootenai County. At trial, Bell objected to the admission of his blood-alcohol test result on the ground that an insufficient

foundation was established. The objection was overruled.

On appeal from the judgment of conviction, Bell contends first that the trial judge erred in admitting the blood-alcohol test result in the absence of a showing that his test procedure complied with the requisite Department of Health and Welfare testing standards. Second, he asserts that it was error to admit the test result in the absence of proof by the state that Bell had been informed of his right under I.C. § 18–8002 to have an additional test for alcohol concentration made by a person of his own choosing. We determine for reasons that follow that the district court did not err in admitting the test result. We affirm the judgment of conviction.

Bell's automobile was traveling in the wrong direction in a freeway lane when it crashed head on with another vehicle. Immediately after the accident Bell was taken by a police officer to a hospital for medical treatment. At the hospital, the officer requested that Bell undergo a blood-alcohol test. The request came after the officer detected the odor of alcohol on Bell and had learned that alcohol had been found in Bell's vehicle at the accident scene. Bell consented and a registered nurse withdrew blood for the test, using a "Venoject" test kit.

Bell's first assignment of error is based upon the testimony of this nurse. During cross examination about the procedure used to withdraw Bell's blood sample, the nurse was asked whether the sample tubes supplied in the test kit were empty prior to the withdrawal of blood. The nurse agreed that the tubes were empty. There was "nothing in them." When the state moved to enter the test result into evidence, Bell objected. Based on the nurse's response that nothing was in the sample tubes, Bell contended that the sample tubes lacked two required chemical additives, a preservative (sodium fluoride) and an anti-coagulant agent. Bell argued that compliance with the proper test methods and standards, which include the requirement of the two chemical additives, was a foundational prerequisite to admission of the test result. Without a showing by the state that the tubes used in taking a blood sample contained the required chemical additives, the test result should not have been admitted.[1]

The district court disagreed. The court overruled Bell's objection without making a finding of whether the required chemicals were absent from the tubes. The court concluded that even if the chemicals were absent no reason was shown to doubt the reliability of the test. The court interpreted the question of compliance with the test methods and standards as one which went to the weight of the evidence, not to the foundation for its admission.

Bell reasserts his argument on appeal. He notes first that under I.C. § 18–8004(4) the analysis of blood samples is to be performed by a state approved laboratory under the standards adopted by the Department of Health and Welfare.[2] The stan-

---

**1.** We question the conclusion made by Bell that the nurse's statement that the tubes had "nothing in them" referred to the required chemical additives. On cross examination the nurse testified that he made only a cursory inspection of the contents of the test kit because the kit came factory sealed and in this instance he had been the one who opened the container. The nurse said that he checked the tubes only for breakage, Bell's counsel then questioned him as follows:

Q. All right. Did you check to see whether or not they were empty?
A. Oh, yes, sir.
Q. All right. Were they empty?
A. Yes, sir.
Q. Nothing in them?
A. Nothing in them.

This limited exchange makes no clear reference to the chemical additives. This omission is significant. According to the listed contents of the kit, the chemicals in each tube amount to only 120 milligrams. We note that a common five-grain aspirin tablet will contain only 325 milligrams of material. Accordingly, as the state has argued, the chemicals in powder form in each test tube represent only a "dusting" of material inside the tube. Of course, even if he had been asked about the chemicals specifically, the nurse could do little more than testify whether he observed the presence of the "dusting." He would not be competent to testify either that the powder was or was not of the required chemical composition and weight.

**2.** The language of I.C. § 18–8004(4) was changed in 1988, omitting all references to the Idaho Department of Health and Welfare. The

dards for performance of blood-alcohol tests have been promulgated by the department under title 2, chapter 7—Rules Governing the Performance of Forensic Alcohol Examinations, Rules and Regulations of the Department of Health and Welfare. Among these standards, IDAPA 2.7500,01.-a, provides in pertinent part: "Blood specimens *shall* contain ten (10) milligrams of sodium fluoride per cubic centimeter. of blood plus an appropriate anticoagulant." (Emphasis added.) Second, Bell cites several cases from other jurisdictions which hold that blood-alcohol or breath test results are not admissible unless compliance with the applicable testing standards, as well as other foundational requirements, is established. These cases include *Fuenning v. Superior Court in and for the County of Maricopa*, 139 Ariz. 590, 680 P.2d 121 (1983); *People v. Emrich*, 132 Ill.App.3d 547, 87 Ill.Dec. 867, 478 N.E.2d 6 (1985); *State v. McDonald*, 697 P.2d 1328 (Mont. 1985); *McManus v. State*, 695 P.2d 884 (Okla.Crim.App.1985).

The state argues that the district court's determination was correct; compliance with the regulations is not a question of foundation, but one which goes to the weight to be given the test result. The state also urges that the record shows the test, as administered, in fact complied with the applicable regulations.

We begin by noting that most jurisdictions in considering the question of the admissibility of a blood-alcohol test result follow the position asserted by Bell. They hold that compliance with the regulations governing blood-alcohol tests is foundational. The test result is not admissible unless compliance with these regulations is established. Annot., *Blood Alcohol Test—Prescribed Methods*, 96 A.L.R.3d 745, §§ 2–3 (1979). The position advanced by the state and the district court, that the question of noncompliance goes to the weight and not

the admissibility of the evidence is a minority position adopted in several jurisdictions including California. *People v. Adams*, 59 Cal.App.3d 559, 131 Cal.Rptr. 190 (1976); *State v. Hansen*, 203 N.W.2d 216 (Iowa 1972); *State v. Mills*, 133 Vt. 15, 328 A.2d 410 (1974); *Shumate v. Commonwealth*, 207 Va. 877, 153 S.E.2d 243 (Va.1967).

Both of these positions, however, are based on the language of the specific state statutes which provide for administering the test and utilizing the test result at trial. In the cases cited by Bell, the language of the statutes expressly condition either the "validity" (*People v. Emrich, supra; McManus v. State, supra*) or the "admissibility" (*Fuenning v. Superior Court, supra; State v. McDonald, supra*) of the test result on compliance with the requisite department regulations. The effect of noncompliance with the testing procedures under these statutes is clearly indicated, the evidence is inadmissible.

The minority jurisdictions like California have statutes that do not expressly condition the "validity" or "admissibility" of the test result on compliance with the test regulation requirements. Instead, some of these statutes merely provide that the tests "shall" be administered and analyzed according to certain specified standards or regulations. *See People v. Adams, supra.*

This is the form of Idaho's legislation. The pertinent language of I.C. § 18–8004(4), in effect at the time, stated:

> Analysis of blood, urine or breath for the purpose of determining the alcohol concentration *shall* be performed by a laboratory operated by the Idaho department of health and welfare or by a laboratory approved by the Idaho department of health and welfare under the provisions of approval and certification standards to be set by that department,.... [Emphasis added.] [3]

test analysis is now to be performed by a laboratory operated or approved by the Idaho Department of Law Enforcement and is subject to the approval and certification standards of that department. 1988 Idaho Sess.Laws, ch. 47 § 4, p. 54, 65.

3. "Analysis" as used in the quoted language of I.C. § 18–8004(4) refers only to that part of the testing procedure which must be performed in an approved laboratory. However, a critical part of the "analysis," in a broader sense, is the first step of collecting a sample for testing. The collection of blood, urine or breath samples

The question then is whether, in the absence of an express exclusionary provision, this language nevertheless requires exclusion of a test result where compliance with the Health and Welfare testing requirements is not shown.

The admissibility of the result of a scientific test such as the blood-alcohol test in I.C. § 18–8004 turns normally on a foundation which establishes the acceptability, validity, reliability and accuracy of the test and test procedures. In the admission of a test result for alcohol concentration the Legislature has concluded that certain foundational elements need not be presented at trial unless such elements are disputed. The Legislature has acknowledged that certain tests, due to a history of reliability and accuracy, are presumed to be valid and acceptable. This has also been acknowledged by the courts. *See State v. Hartwig,* 112 Idaho 370, 732 P.2d 339 (Ct. App.1987) (holding that Intoximeter 3000 test result may be offered into evidence without detailed foundation, but reliability of result may be challenged by defendant).

The Legislature has enacted a statutory scheme which allows an expedient method for admitting a blood-alcohol test result into evidence without the need for some expert testimony. As provided by I.C. § 18–8004(4):

Notwithstanding any other provision of law or rule of court, the results of any test for alcohol concentration and records relating to calibration, approval, certification or quality control performed by a laboratory operated or approved by the Idaho department of health and welfare or by any other method approved by health and welfare shall be admissible in any proceeding in this state without the necessity of producing a witness to establish the reliability of the testing procedure for examination.

When this proposed statute was presented to the Legislature the statement of purpose accompanying the legislation explained

that expert witness testimony was an unnecessary burden on the state. Such testimony, if used merely to establish a foundation, provided superfluous verification of a test procedure which the Legislature believed to produce an "extremely reliable" result.

Inherent in this statutory scheme, however, is an awareness by the Legislature of the need for uniform test procedures. An "extremely reliable" test result can only be the product of a test procedure which from previous use is known to be capable of producing an accurate result. This benefit is best provided by strict adherence to a uniform procedure. This was recognized by the Legislature and is apparent first, from the statutory language which provides for the test procedure to be determined by the Idaho Department of Health and Welfare, and second, by the "shall" language mandating adherence to the standards set by that Department.

■ The acceptance by the Legislature of test procedures as designated by the Idaho Department of Health and Welfare does not wholly eliminate the need of establishing foundational requirements for a test result. This is required even in light of the legislative directive to utilize an expedient means to admit such evidence. The adoption of the particular test procedure merely recognizes the validity and reliability of that particular accepted test. It must still be established at trial that those procedures which ensure the reliability and in turn the accuracy of the test have been met. Absent such a showing, the expedient scheme adopted by the Legislature fails to guarantee the admission of reliable evidence. Without expert witness testimony to establish these necessary foundational elements, compliance with the test procedure must be shown. We hold that to admit the test result the state must provide adequate foundation evidence consisting either of expert testimony or a showing that

---

obviously will not generally be made at an approved laboratory. Nevertheless, because collection of samples is an essential part of analysis, Department of Health and Welfare regulations extend to that activity and, for the collection of blood, include descriptions of the proper collection instruments, antiseptics and chemical additives for preserving the sample in optimum condition for testing.

the test was administered in conformity with the applicable test procedure. Of course, a test result, once admitted, still may be attacked by the defendant. In that event, the trier of fact will determine the ultimate weight to be given the test result.

■ We conclude that the district court erred in stating that compliance with the testing standards went to the weight of, rather than to the foundation for, the evidence. The next question is whether the proof presented at trial established the requisite compliance. This proof included the test kit itself with its manufacturer's certificate, the testimony of the nurse, the officer who oversaw the blood withdrawal, and a state forensic officer who performed the test analysis. The state contends the proof established that the kit was complete with all the required contents including the chemical additives. We agree with this contention. Among the foundational proof presented, the test kit, along with its certificate, constitute an adequate showing by the state of the presence of the required chemicals.

The showing of an appropriate foundation is a preliminary question of admissibility to be decided by the trial court. I.R.E. 104. The certificate provided a direct statement regarding the presence of these required chemicals. The certificate listed each item in the kit. The two blood collection or sample tubes were described as follows: "2 T–200FX 10 ml Venoject Tubes, each containing 20 mg Potassium Oxalate and 100 mg Sodium Fluoride." An identical list appeared on the outside of the kit's container.

We note that the certificate, as well as the labeling on the kit, is self-authenticating under I.R.E. 902(7): "Trade inscriptions and the like. Inscriptions, signs, tags, or labels purporting to have been affixed in the course of business and indicating ownership, control or origin." This printed insert which the manufacturer produced and packaged with the kit satisfies for foundational purposes the requisite showing of authenticity required to establish the presence of the contested chemicals. A trial court may also rely upon such a certificate

as proof, in the determination of the preliminary question of admissibility, of the existence of the required chemicals. We conclude as a matter of law that the evidence in this case was sufficient to show compliance with all Department of Health and Welfare testing standards.

Bell's second foundational attack on the test result is based upon the requirements of I.C. § 18–8002(3). Under this section of the statute, a person who is to undergo an evidentiary test for alcohol concentration is to be provided with certain information including the opportunity to take an additional test. Idaho Code § 18–8002(3) contains these provisions:

At the time an evidentiary test for concentration of alcohol, drugs or other intoxicating substances is requested, the person shall be informed that ...:

(d) *After submitting to the test he may, when practicable, at his own expense, have additional tests made by a person of his own choosing.* [Emphasis added.]

At trial, the state failed to establish that the required information under the statute was given to Bell. Therefore, under the present record, we do not know whether a police officer did inform Bell that he could have an additional test made. Bell argued that the failure to show that he was informed of the provisions precluded the admission of the test result due to a lack of foundation. The district court rejected Bell's arguments. The court found that I.C. § 18–8002 did not specifically provide for the inadmissibility of the test result upon a failure to show that the person was informed of his rights under the statute. The court also concluded that if Bell had not been informed of his right to an additional test, he should have filed a timely motion to suppress the results of the blood test obtained by the officer. Bell's failure to file such a motion under I.C.R. 12(b)(3) was the final reason given by the court for overruling Bell's objection to admission of the test results.

Bell's argument that a proper foundation has not been established for the admission of the test result relies upon the language

quoted from I.C. § 18–8002(3)(d) and the related language of I.C. § 18–8002(4)(d):

> After submitting to the test at the request of the police officer, he may, when practicable, at his own expense, have additional tests made by a person of his own choosing. The failure or inability to obtain an additional test or tests by a person shall not preclude the admission of an evidentiary test for alcohol concentration taken at the direction of the police officer unless the additional test was denied by the police officer.

Bell's interpretation of this language equates the failure of the state to prove he was informed of his right to take an additional test with a "denial" by the police officer of his right to such a test.

█ The state has raised several points against Bell's argument. The first is that Bell had the burden to establish or at least to initially produce some evidence showing that "the additional test was denied by the police officer." The state has noted, correctly, that the police officer was never even asked at trial by either side whether he had given Bell the information required by I.C. § 18–8002(3). Second, the state argues that the Legislature did not say that the mere failure to advise a person of his right to an additional test would preclude the admission of the results of the test taken at the officer's request. The language of the statute shows a legislative intent that test results *"shall not"* be excluded "unless the additional test *was denied* by the police officer." (Emphasis added.) Finally, the state argued that Bell should have moved to suppress the test results prior to trial if he believed that the evidence was wrongfully obtained. Because we agree with this last contention of the state, we do not address the merits of the state's other arguments.

Idaho Criminal Rule 12(b) states:

> Any defense objection or request which is capable of determination without trial of the general issue may be raised before the trial by motion. The following must be raised prior to trial:
>
> (1) Defenses and objections based on defects in the prior proceedings in the prosecution; or
>
> .    .    .    .    .
>
> (3) Motions to suppress evidence on the ground that it was illegally obtained;
>
> . . . .

Under I.C.R. 12(d), a Rule 12(b)(3) motion must be filed within fourteen days after the entry of a plea or seven days before trial, whichever is earlier. The court may in its discretion enlarge this time period and with a showing of good cause or excusable neglect relieve a party for failure to comply with the time requirements.

Here, the court entered a specific order directing the filing of all pretrial motions within the time set by the rules. In turn, Bell was put on adequate notice that he was required to file his objection to the use by the state of the test result obtained in possible violation of I.C. § 18–8002. The failure of Bell to make such a motion, absent a showing of cause, constitutes waiver of the objection. I.C.R. 12(f). *See also State v. Creson*, 33 Or.App. 369, 576 P.2d 814 (1978).

There are sound reasons why such matters ought to be submitted to the trial court in advance of trial rather than waiting until the jury has been selected and practically all of the state's case has been presented. Here, Bell's objection raised unique legal questions involving the interpretation of I.C. § 18–8002. A trial court in the midst of a jury trial is unfairly burdened with such questions when they can be better addressed by both sides and the court in the context of a pretrial motion. The manner in which the issue arose here was made more complicated by procedural questions involving who had the burden to come forward with evidence showing that the officer had "denied" Bell the opportunity to take an additional test.[4]

---

4. We note that the Idaho Supreme Court recently held in *Matter of Griffiths*, 113 Idaho 364, 744 P.2d 92 (1987) that in *civil* proceedings concerning suspension of license for alleged refusal to take a proffered test, the driver-defendant has the burden to prove that he was not advised of the information specified in I.C. 18–8002(3). Whether the defendant in a *criminal* case has a

Accordingly, we hold that the trial court correctly ruled that Bell should have presented his objection under I.C. § 18–8002 in a motion to suppress. We conclude that the trial court did not err in admitting the test results over Bell's objection. We affirm the judgment of conviction.

WALTERS, C.J., and BURNETT, J., concur.

similar burden, or even the burden of coming forward with some evidence to raise the issue of noncompliance with I.C. § 18–8002(3), has not been decided.