790 P.2d 390

**STATE of Idaho, Plaintiff–Respondent,**

v.

**Rose Dry PHILLIPS, Defendant–Appellant.**

**No. 17756.**

Court of Appeals of Idaho.

April 6, 1990.

Michael J. Wood, Twin Falls County Public Defender and Lisa A. Barini–Garcia, Deputy Public Defender, argued, Twin Falls, for defendant-appellant.

Jim Jones, Atty. Gen. and Myrna A.I. Stahman, Deputy Atty. Gen., argued, Boise, for plaintiff-respondent.

WALTERS, Chief Judge.

Rose Phillips was convicted in the district court for Twin Falls County on two counts of vehicular manslaughter. I.C. § 18–4006(3)(b). For these offenses she received concurrent unified sentences totaling seven years, with a four-year minimum period of confinement. On appeal, Phillips contends that several photographs of the victims of the accident, as well as the results of her blood alcohol test, should not have been admitted into evidence at her trial. Phillips also submits that the trial judge improperly instructed the jury regarding the burden of proof in a criminal trial, and that the trial judge abused his sentencing discretion. We affirm.

The essential facts of this case may be stated as follows. On December 26, 1987, a vehicle operated by Phillips and carrying three other individuals as passengers was involved in a single-car accident in Twin Falls. Two of the passengers—Phillips' young nieces—were killed. A blood sample taken from Phillips immediately following the accident indicated that her blood alcohol content (BAC) was .182 percent. Phillips was charged with two counts of vehicular manslaughter. During her trial, Phillips objected to the introduction of three photographs of the victims, to the introduction of her BAC test results, and to a jury instruction regarding the state's burden of proving she was under the influence of alcohol at the time of the accident. These objections were overruled. Phillips was found guilty of both counts of vehicular manslaughter and was subsequently sentenced by the trial court. This appeal followed.

I

We first address Phillips' claim regarding admission of the photographs of the victims. Some additional background facts are necessary to an understanding of Phillips' contention. Prior to calling witnesses, the prosecutor requested a ruling on the admissibility of several photographs of the accident scene—including three photographs of the victims. The first of these photographs (exhibit 6) depicted one victim's torso hanging out of the wrecked automobile. The second photograph (exhibit 3) was a full-length picture of the other victim showing the nature of the wounds which caused her death. This photograph was taken at the hospital morgue. The third photograph (exhibit 11) was a black-and-white picture of a portion of the scalp and hair from the head of the victim in the first photograph. This photograph was taken immediately following the accident and showed the scalp laying on the ground beside the automobile. The prosecutor stated that he wished to introduce the first and second photographs of the victims for identification purposes. Phillips objected on the grounds that the photographs were prejudicial, and because identi-

ty of the victims was not an issue; however, Phillips refused to stipulate to the identification of the victims. The trial judge ruled that the photographs could be offered in evidence. During trial, Phillips' daughter—who was also a passenger in the automobile at the time of the accident—testified that the victims were Phillips' nieces. When the daughter was asked to identify the victims in the photographs, Phillips renewed her objection, but was overruled. The daughter identified the victims and the photographs (exhibits 3 and 6) were admitted into evidence.

In the course of the trial, the prosecutor called as a witness the police officer who had investigated the accident. The prosecutor asked the police officer to identify the scalp in the third photograph. The officer identified the scalp as that of the victim whose torso was depicted in the first photograph. Phillips again objected to admission of the photograph on the grounds of prejudice and lack of controversy over the identity of the victim. The trial judge overruled Phillips' objection, stating that the photograph was relevant because it tended to prove the homicide and cause of death of the victim. The photograph was then admitted into evidence as exhibit 11.

On appeal, Phillips contends that the trial judge erred in admitting the three photographs into evidence because they were inflammatory, and because their probative value was substantially outweighed by the unfair prejudice to her case. I.R.E. 403. Phillips points out that identification was not an issue at trial; both her daughter and the coroner who performed an autopsy on the victims provided adequate identification evidence.

■ Generally, photographs of a victim in a prosecution for homicide are, in the discretion of the trial court, admissible as evidence as an aid to the jury in arriving at a fair understanding of the evidence, proof of the corpus delicti, extent of injury, condition and identification of the body, or for their bearing on the question of degree or atrociousness of the crime, even though such photographs may have the additional

effect of tending to excite the emotions of the jury. *State v. Martinez,* 92 Idaho 183, 188, 439 P.2d 691, 696 (1968). Once the trial judge determines the relevancy of a photograph, he or she must decide whether its probative value is substantially outweighed by any inflammatory effect. *See State v. Beason,* 95 Idaho 267, 506 P.2d 1340 (1973); I.R.E. 403. Absent an abuse of discretion, the trial court's decision regarding admission of such photographs will not be disturbed on appeal. *State v. Clark,* 115 Idaho 1056, 772 P.2d 263 (Ct. App.1989).

 Based upon our review we conclude that the first two photographs were properly admitted for the purpose of identifying the victims. Relevancy of the photographs is not in question; each depicts a victim of the fatal crash. Although Phillips argues that identification of the victims already was proven through the testimony of Phillips' daughter and the coroner, the state was not bound to establish identity by the least-prejudicial means possible. *See e.g., State v. Buzzard,* 110 Idaho 800, 718 P.2d 1238 (Ct.App.1986) (review denied) (identity evidence admissible even though identity of homicide victim not disputed). Furthermore, we fail to see where the prejudicial impact of the photographs substantially outweighed their probative value. I.R.E. 403. These photographs depict the bodies of the victims shortly after the accident occurred. While disturbing—considering the nature of the accident and the age of the victims—neither photograph was taken in a manner which was inflammatory, or which appears as an attempt to impassion the jury. Under the circumstances, we uphold the trial judge's decision to admit these photographs in evidence.

 With respect to exhibit 11—the photograph of a victim's scalp laying in the snow on the side of the road—we conclude that it should not have been admitted into evidence. This photograph had no probative value, but carried with it *some* prejudicial impact not necessary to prove the manslaughter charges against Phillips. Nevertheless, when viewed against the totality of the evidence, the erroneous admission of this photograph was harmless. We hold that, beyond a reasonable doubt, the verdict would have been the same without exhibit 11. I.C.R. 52; *State v. Bussard,* 114 Idaho 781, 760 P.2d 1197 (Ct.App.1988).

## II

 Next, we address Phillips' concern regarding the reliability of her BAC test. Phillips contends that the trial judge erred by admitting the test results because, contrary to Idaho Department of Health and Welfare regulations governing performance of forensic alcohol examinations,[1] the laboratory technician who drew her blood used an isopropyl alcohol swab to cleanse her skin prior to injecting the extraction needle into her arm. Phillips submits that the isopropyl alcohol may have contaminated her blood sample, thus rendering the test results per se unreliable and hence inadmissible.

In *State v. Bell,* 115 Idaho 36, 764 P.2d 113 (Ct.App.1988), we addressed a question similar to that raised by Phillips. After submitting to a BAC test at the time of his arrest, Bell was tried and convicted of driving under the influence. On appeal, Bell contended that the prosecutor's failure to

---

1. Title 2, Chapter 7 of the Rules and Regulations of the Department of Health and Welfare Governing the Performance of Forensic Alcohol Examinations, IDAPA 2.7500, 01. a, provides, in pertinent part:

 Blood samples shall be collected using sterile, dry syringes and hypodermic needles, or other equipment of equivalent sterility. The skin at the area of puncture shall be thoroughly cleansed and disinfected with an aqueous solution of nonvolatile antiseptic. *Alcohol or phenolic solutions shall not be used as a skin antiseptic.* [Emphasis added.]

In 1988, the language of the enabling statute for these regulations, I.C. § 18–8004(4), omitted all reference to the Idaho Department of Health and Welfare. The test analysis is now performed by a laboratory operated by the Idaho Department of Law Enforcement and is subject to the approval and certification standards of that department. 1988 Idaho Sess.Laws, ch. 47, § 4, pgs. 54, 65. *See State v. Bell,* 115 Idaho 36, 37–38, n. 2, 764 P.2d 113, 114–15, n. 2 (Ct.App. 1988).

show that the BAC test kit was in compliance with Department of Health and Welfare regulations was a foundational requirement to admission of the test results; therefore, the results were inadmissible. We disagreed, holding that the state had produced sufficient evidence to establish that the test kit was in compliance with the appropriate standards. *Id.* at 40, 764 P.2d at 117. In reaching our conclusion, we noted that I.C. § 18–8004(4)[2] provides for an expedient method for admitting BAC test results into evidence when the analysis is conducted pursuant to Health and Welfare standards. *Id.* at 39, 764 P.2d at 116. However, we also recognized that establishing the reliability and accuracy of such test results can be accomplished alternatively through expert testimony at trial. *Id.* at 39–40, 764 P.2d at 116–17.

In the present case, we conclude that the reliability and accuracy of Phillips' BAC test results were established through expert testimony at trial. During the state's case in chief, the manager of the laboratory where Phillips' blood was analyzed testified that contamination of the blood sample by the isopropyl alcohol swab would be "negligible." A forensic pathologist concurred with the manager's conclusion, testifying that it was generally accepted in the medical community that use of an isopropyl alcohol swab had no documented effect on blood alcohol tests as performed in this case. The pathologist's opinion was substantiated by an emergency physician who testified that his experience indicated no "difference" in BAC test results when an isopropyl alcohol swab was used. The witnesses' testimony was unrefuted by Phillips. Based upon this evidence, the trial judge was free to conclude that the test results were reliable and accurate. We therefore hold that the trial judge did not err in admitting the results of Phillips' BAC test into evidence.

## III

We now address Phillips' assertion that the jury was improperly instructed. After hearing evidence, the trial judge gave the following instruction:

If the evidence establishes beyond a reasonable doubt that the amount, by weight, of alcohol in the defendant's blood was one-tenth of one percent (0.10%) or more at the time of the test as shown by a chemical analysis of his [sic] blood, breath, or urine, you shall find that the defendant was under the influence of alcohol at the time of the alleged offense, unless from all the evidence you have a reasonable doubt that she was in fact under the influence of alcohol at the time of the alleged offense.

Phillips contends that the jury could have interpreted this instruction to create a presumption that, based upon a finding that her BAC was above .10 percent, the jury would have to find her guilty *unless* the evidence convinced them otherwise. Phillips contends that the practical affect of this instruction was to shift the burden of proof to her, in violation of her due process rights under the fourteenth amendment. *See Sandstrom v. Montana,* 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979).

We disagree. In *State v. Koch,* 115 Idaho 176, 765 P.2d 687 (Ct.App.1988), we reviewed the identical instruction under similar circumstances, as raised in the same judicial district by the same public defender's office. In holding that the instruction was defective, but harmless error, we noted:

Besides being awkward and confusing, the instruction contains two legal flaws. First, it gave Koch a possible "out" contrary to legislative intent. Under current law, it is *per se* unlawful for a person to drive a motor vehicle with a blood alcohol concentration of .10 percent or above. I.C. § 18–8004(1). The in-

---

**2.** As provided at the time of Bell's arrest, I.C. § 18–8004(4) reads, in pertinent part:

Notwithstanding any other provision of law or rule of court, the results of any test for alcohol concentration and records relating to calibration, approval, certification or quality control performed by a laboratory operated or approved by the Idaho department of health and welfare or by any other method approved by health and welfare shall be admissible in any proceeding in this state without the necessity of producing a witness to establish the reliability of the testing procedure for examination.

struction here permitted the jury to acquit Koch even if they found his blood alcohol concentration was .10 percent or higher. However, Koch obviously was not prejudiced by this error.

Second, the instruction does not clearly express the gravamen of one theory of the offense: *driving* while having a .10 percent or higher blood alcohol concentration. Instead, it focuses the jury's attention to the blood alcohol concentration level at the time of *testing*. However, unlike the erroneous instruction in *Sandstrom*, this instruction did not shift the burden of proof, nor did it create an impermissible presumption.

The instruction required the state to prove beyond a reasonable doubt that Koch was in fact under the influence at the time of the alleged offense. Consequently, the burden did not shift to Koch. The instruction permitted the jury to find that Koch was driving under the influence based upon the results at the time of the testing. However, the instruction allowed the jury to convict Koch upon the test result *only* if they *also* believed beyond a reasonable doubt that Koch was "under the influence" at the time of the offense. This, of course, is incorrect. The state may establish guilt either by evidence showing that the defendant was driving with a blood alcohol level of .10 percent or higher, or by showing—under a totality of the evidence—that the defendant was driving "under the influence." The jury may infer from a blood alcohol test result what the probable concentration was while the defendant was driving. *See State v. Knoll,* 110 Idaho 678, 718 P.2d 589 (Ct.App.1986). What made the instruction here erroneous— but beneficial to Koch—was it did not tell the jury that if they found Koch's blood alcohol concentration to have been .10 percent or higher when he was driving they were required to find him guilty of DUI. Thus, although the instruction is defective, we hold that it was harmless error. I.C.R. 52. Needless to say, we disapprove of the instruction. [Emphasis original.]

*Id.* at 180, 765 P.2d at 691. We reach the same conclusion here. We therefore hold

that no reversible error occurred by virtue of giving this instruction. However, we re-emphasize our disapproval of this instruction for use in future cases.

IV

■ Finally, we address Phillips' claim that her sentences are excessive. Phillips contends that due to her lack of a prior criminal record and her need for psychological treatment, the trial judge should have placed her on probation. We note that Phillips has failed to provide this court with a copy of the sentencing transcript in this case. As a result, we are unable to determine what, if any, weight the judge placed on these factors. In any event, we have reviewed the record as it exists before us, including Phillips' presentence investigation report. In light of the sentencing review criteria set forth in *State v. Toohill,* 103 Idaho 565, 650 P.2d 707 (Ct.App.1982) and *State v. Sanchez,* 115 Idaho 776, 769 P.2d 1148 (Ct.App.1989), we conclude that the trial judge did not abuse his sentencing discretion.

The judgment of conviction and sentences are therefore affirmed.

BURNETT, J., and BAIL, J., Pro Tem., concur.