829 P.2d 1369

**STATE of Idaho, Plaintiff–Respondent,**

v.

**Truman E. UHLRY, Defendant–Appellant.**

**No. 19353.**

Court of Appeals of Idaho.

April 24, 1992.

Alan E. Trimming, Ada County Public Defender; Eric R. Rolfsen, Deputy Public Defender, Boise, for defendant-appellant.

Larry EchoHawk, Atty. Gen., Myrna A.I. Stahman, Deputy Atty. Gen., Boise, for plaintiff-respondent.

WALTERS, Chief Judge.

Truman Uhlry was found guilty by a jury of driving under the influence of alcohol, his second such offense in five years. I.C. §§ 18–8004, –8005. He challenges the magistrate's decision, affirmed by the district court, that the state provided a sufficient foundation to establish that his blood-alcohol content (BAC) test was performed by a laboratory or method approved by the Idaho Department of Law Enforcement as required by I.C. § 18–8004(4). We affirm.

During the afternoon of June 21, 1990, Uhlry was involved in an auto accident with another motorist. Eyewitnesses testified that—without any warning—Uhlry's car turned across the other's lane of travel, causing the two cars to collide. When a police officer arrived and started to ask Uhlry some questions, the officer noticed that Uhlry was staggering, his breath smelled of alcohol even though he had been smoking, his speech was slurred, and his eyes were bloodshot. An open cold beer and a six pack of closed beer was found a short distance from Uhlry's car. The temperature that day was in the 90's. When asked if he had been drinking, Uhlry immediately started complaining that his head and neck hurt. The officer called for paramedics, and Uhlry was transported to St. Alphonsus Regional Medical Center, the nearest hospital.

While being transported, Uhlry became belligerent and started yelling and screaming at the paramedics about being restrained to a back board used because of a concern for spinal injuries. A paramedic later testified that he smelled alcohol on Uhlry's breath. At the hospital, Uhlry continued to be combative when Dr. David Gough, the attending emergency room physician, started his examination. The doctor smelled alcohol on Uhlry's breath and ordered that blood be drawn for testing, in order to verify the doctor's initial conclusion that Uhlry was acutely intoxicated.

Teresa Hazel, a board certified medical lab technologist, took a blood sample from Uhlry. She testified that she remembered taking and marking the sample. She gave the marked sample to Joan Corsberg, another medical technologist, who analyzed the blood using the hospital's "TDX" machine, an instrument designed for blood-alcohol tests. Corsberg's analysis revealed an alcohol concentration of .27. At trial, Corsberg testified regarding her education and professional certification as a technologist, and that she had eight years of experience using the TDX machine. She testified that she remembered receiving Uhlry's blood sample and that she tested it according to the normal procedure, which she had already explained. Corsberg stated that maintenance on the TDX machine is performed regularly and that continuous maintenance is provided by the machine's manufacturer as needed. She also testified that her primary responsibility in the maintenance context was to recognize when a problem arose and that if there was a problem, she would be aware of it.

At trial, Uhlry objected to Corsberg's testimony about the results of the test. The magistrate had previously held that the results would be admitted, subject to

being stricken if the state did not provide the proper foundation when Dr. Gough—the last medical witness scheduled—testified. Uhlry renewed his objection at the proper time, and the magistrate overruled it, stating:

> 18–8004, sub-section 4 talks about analysis of blood, urine or breath for the purpose of determining the alcohol concentration shall be performed by a laboratory operated by the Idaho Department of Law Enforcement or by a laboratory approved by the Idaho Department of Law Enforcement, or by any other method approved by the Idaho Department of Law Enforcement.
>
> Agreed that the testimony could have been a little more extensive there. That this procedure was approved by [the] Idaho Department of Law Enforcement. I believe the doctor's testimony was that it was identical with it, with the components of how it was tested. I think the common sense approach of the Court would get by any technical problem with that particular sub-section. Because as Miss Fisher stated, if we can't rely on them handling people in life or death situations in emergency room, it's [sic] seems to me that that would be as reliable or as carefully administered as anything done by Department of Law Enforcement or anything approved by the Department of Law Enforcement.
>
> I'm going to hold that your objection, which we kind of preliminarily denied, is still denied under those sub-sections.

The state argues that the testimony of Dr. Gough and medical technologist Corsberg sufficiently established that Uhlry's blood test was performed by a method approved by the Idaho Department of Law Enforcement. Implicit in this argument is that the hospital and its staff conducted the test using accepted and reliable equipment and acted in a manner consistent with law enforcement policies to ensure the accuracy of the test.

Preliminarily, we note that when reviewing an appellate decision of the district court, we examine the record of the magistrate independently of but with due regard for the district court's decision. *State v.*

*Van Sickle,* 120 Idaho 99, 101, 813 P.2d 910, 912 (Ct.App.1991).

To show that a blood test revealed a BAC of .10 or higher, the state may rely on I.C. § 18–8004(4), which provides an expedient method for admitting BAC test results into evidence when the analysis is conducted pursuant to Department of Law Enforcement methods. *State v. Phillips,* 117 Idaho 609, 613, 790 P.2d 390, 394 (Ct.App.1990), *citing State v. Bell,* 115 Idaho 36, 40, 764 P.2d 113, 117 (Ct.App. 1988). Sub-section (4) provides that blood-alcohol tests

> shall be performed by a laboratory operated by the state of Idaho department of law enforcement or by a laboratory approved by the Idaho department of law enforcement under the provisions of approval and certification standards to be set by that department, or by any other method approved by the Idaho department of law enforcement. Notwithstanding any other provision of law or rule of court, the results of any test for alcohol concentration and records relating to calibration, approval, certification or quality control performed by a laboratory operated or approved by the Idaho department of law enforcement or by any other method approved by the Idaho department of law enforcement shall be admissible in any proceeding in this state without the necessity of producing a witness to establish the reliability of the testing procedure for examination.

Establishing an appropriate foundation for test results is a preliminary question of admissibility to be decided by the trial court. I.R.E. 104; *State v. Bell,* 115 Idaho at 40, 764 P.2d at 117. An adequate foundation may be established by showing that the test was administered in conformity with applicable test procedures or by expert testimony. *Bell,* 115 Idaho at 39–40, 764 P.2d at 116–17.

In this case, Teresa Hazel testified that she remembered receiving both an order to draw Uhlry's blood and drawing his blood. Although on cross-examination she testified that she was not one-hundred percent

sure that Uhlry was the man she drew blood from and she may perform up to twenty blood draws a day, she did mark the blood sample with Uhlry's name before giving it to Joan Corsberg, who ran the tests.

Corsberg testified to her experience with the TDX machine, and that she may perform many BAC tests daily. She testified that she remembered receiving Uhlry's blood sample and that she tested it according her normal procedure, developed through training and eight years of experience with the TDX. On cross-examination, Corsberg testified that maintenance on the TDX machine is performed daily, weekly and monthly, and that continuous maintenance is provided by the machine's company. She also testified that if there was a problem with the machine she would be aware of it. Importantly, in response to defense counsel's objection that St. Alphonsus was not licensed by the Department of Law Enforcement to conduct evidentiary testing, Corsberg testified that St. Alphonsus was so licensed.

Dr. Gough testified that he was working in the emergency room when Uhlry was brought in by the paramedics. He testified that he was familiar with the machine used to test blood for alcohol and he understood that the method used by the hospital was the same as that used by the Department of Law Enforcement. The doctor testified that he had talked with medical technologists at the state crime lab and the equipment they described was identical to that used at the hospital. He then explained how the hospital's blood analysis equipment measured blood-alcohol content.

In view of the foregoing, we agree with the magistrate that sufficient evidence of reliability of the testing procedure was presented to establish a proper foundation for admission of the BAC test.

Accordingly, the judgment of conviction is affirmed.

SWANSTROM and SILAK, JJ., concur.