**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 48064**

| | |
|---|---|
| STATE OF IDAHO, | ) |
| | ) **Filed:  November 10, 2021** |
| Plaintiff-Respondent, | ) |
| | ) **Melanie Gagnepain, Clerk** |
| v. | ) |
| | ) **THIS IS AN UNPUBLISHED** |
| DONALD JOSEPH MABERRY, | ) **OPINION AND SHALL NOT** |
| | ) **BE CITED AS AUTHORITY** |
| Defendant-Appellant. | ) |
| | ) |

Appeal from the District Court of the Sixth Judicial District, State of Idaho, Bannock County.  Hon. Robert C. Naftz, District Judge.

Judgment of conviction and concurrent, unified sentences of ten years, with minimum periods of confinement of four years, for three counts of sexual exploitation of a child, <u>affirmed</u>.

Eric D. Fredericksen, State Appellate Public Defender; Brian R. Dickson, Deputy Appellate Public Defender, Boise, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Kenneth K. Jorgensen, Deputy Attorney General, Boise, for respondent.

_____

LORELLO, Judge

Donald Joseph Maberry appeals from his judgment of conviction and concurrent, unified sentences of ten years, with minimum periods of confinement of four years, for three counts of sexual exploitation of a child.  We affirm.

**I.**

**FACTUAL AND PROCEDURAL BACKGROUND**

Faced with charges for ten counts of sexual exploitation of a child and with being a persistent violator, Maberry entered into a binding I.C.R. 11 plea agreement with the State in which he pled guilty to three counts.  I.C. § 18-1507(2)(a).  According to the plea agreement, the length of the determinate portions of Maberry's sentences depended on the results of a psychosexual

1

evaluation. If the evaluator concluded that Maberry presented a low or moderate risk of recidivism, his sentences would be indeterminate terms of ten years, with minimum terms of confinement of two years. However, if the results showed a high risk of recidivism, the determinate portions of his sentences would increase to four years. In exchange for Maberry's pleas, the State agreed to dismiss seven counts of sexual exploitation of a child, the persistent violator enhancement, and charges in two other cases.

The evaluator concluded that Maberry presented a high risk of recidivism. Maberry moved for a second psychosexual evaluation, contending that the evaluator was required to administer certain tests as part of the evaluation absent a basis for not doing so and the evaluator's explanation for not administering the Multiphasic Sex Inventory, 2nd Edition (MSI-II) was inadequate. The district court denied the motion. Pursuant to the plea agreement and the high-risk assessment, the district court sentenced Maberry to concurrent, unified sentences of ten years, with minimum periods of confinement of four years, for the three counts of sexual exploitation of a child. Maberry appeals.

## II.

## ANALYSIS

Maberry asserts the district court erred by denying his motion for a second psychosexual evaluation. Specifically, he contends that the evaluator's explanation for not administering the MSI-II was not legitimate and that, if the MSI-II had been administered, there is a "reasonable possibility" that Maberry's recidivism risk level would have been lower, reducing the determinate portions of his sentences.[1] The State responds that the district court lacked discretion to override the evaluator's professional judgment that the MSI-II was not appropriate and that, even if the district court had this discretion, it did not err. We hold that Maberry has failed to show that the

---

[1] This is not quite what Maberry argued to the district court. Instead of asserting that administering the omitted assessment would have changed the outcome, he acknowledged that "it may be that the MSI-II would simply have confirmed [the evaluator's] designation of high risk. But it is also possible it might have ruled out risk, a stated function of the MSI-II." Because we conclude that the district court properly denied Maberry's motion for a second psychosexual evaluation, we do not address whether his position changed on appeal or whether a "reasonable possibility" is the correct standard for determining prejudice in this context.

psychosexual evaluator's conclusion that a certain assessment was not appropriate entitled Maberry to a new psychosexual evaluation.

By statute, psychosexual evaluations must "be done in accordance with the standards established by the" Idaho Sexual Offender Management Board. I.C. § 18-8316. Those standards list certain assessments that "must" be given, one of which is the MSI-II.[2] Despite this mandatory language, the standards allow an "evaluator [to] determine whether use of a specific assessment is appropriate based on the individual case." But, "if a required assessment is not used, the provider must explain why."

Here, the evaluator tested Maberry's reading level. The results indicated that Maberry "may be able to complete the [Personality Assessment Inventory] but not the MSI-II." After describing the MSI-II, the evaluator noted that "Maberry's reading level is completely insufficient to complete this test." The evaluator did not elaborate further on his reasons for not conducting the MSI-II.

Maberry acknowledges that the evaluator provided an explanation for not administering the MSI-II, but contends that the explanation was not "legitimate," rendering the psychosexual evaluation unreliable. In support of his contention that the explanation must be legitimate for the psychosexual evaluation to be reliable, Maberry relies on *State v. Bell*, 115 Idaho 36, 764 P.2d 113 (Ct. App. 1988). In *Bell*, we addressed whether a trial court erred in admitting the results of a blood-alcohol test at a trial for aggravated driving under the influence. The defendant in *Bell* argued that there was no foundation for the test results because the State had not presented evidence that the "tubes used in taking a blood sample contained the required chemical additives." *Id.* at

---

[2]     A portion of the Board's standards appear in the record as an exhibit attached to Maberry's motion for a second psychosexual evaluation, but the motion does not indicate from where these standards were obtained or whether these standards were in effect at the time of Maberry's evaluation. In its appellate briefing, the State cites to a webpage containing an entire section of the Board's standards, a portion of which appears identical to the standards contained in the appellate record. *See* Idaho Sexual Offender Management Board, *Standards and Guidelines for Adult Sexual Offender Management Practices*, https://somb.idaho.gov/wp-content/uploads/2018/ 10/Adult-Psychosexual-Evaluations-and-Evaluator-Certification-Standards-2020-1.pdf.     Given the lack of a dispute between the parties on this point, we will assume that the standards contained in the appellate record apply to Maberry's evaluation.

37, 764 P.2d at 114. At that time, the relevant statute required blood-alcohol tests to comply with standards adopted by the Idaho Department of Health and Welfare, one of which required the chemical additives. *Id.* at 37 & 37 n.2, 764 P.2d at 114 & 114 n.2. We recognized that the legislature's adoption of the test procedure "recognizes the validity and reliability of that particular accepted test." *Id.* at 39, 764 P.2d at 116. Consequently, we held that showing a blood-alcohol test complied with the procedure was an alternative to establishing foundation by way of expert witness testimony.

Maberry asserts that, in *Bell*, "when those procedures were not followed and no legitimate explanation was given as to why that failure did not affect the results, the ensuing test results were not reliable, and thus, not admissible as evidence." This was not our analysis or our conclusion in *Bell*. Contrary to Maberry's assertion, we held that the evidence in *Bell* "was sufficient to show compliance with all Department of Health and Welfare testing standards." *Id.* at 40, 764 P.2d at 117. Because the test procedure was followed, we had no occasion to examine whether there was a "legitimate explanation" for failing to follow the procedure--indeed, the words "legitimate" and "explanation" appear nowhere in *Bell*. Also contrary to Maberry's representation of *Bell*, we held "that the trial court did not err in admitting the test results." *Id.* at 42, 764 P.2d at 119. We recognize our holding in *Bell* that following test procedures can make a test reliable for purposes of laying foundation for admission of test results at trial, but that principle has no application to a psychosexual evaluation submitted for the court's consideration at sentencing. The core of Maberry's challenge is to the reliability of the evaluator's risk assessment given the evaluator's decision not to administer the MSI-II. But, the Board's standards allow evaluators to exercise judgment in making that decision. Nothing in *Bell* supports the conclusion that a trial court has authority to determine whether an evaluator's explanation for not giving an assessment is "legitimate" and, if not legitimate, to order a new psychosexual evaluation.

Even if Maberry had presented authority that a trial court can determine whether an explanation given by a psychosexual evaluator is legitimate, his argument still fails. Maberry asserts the evaluator's "own comments reveal" that "a person's low reading comprehension scores do not justify *not giving the test at all*, but rather, should be compensated for by using alternative

4

testing conditions."[3] The evaluator's comments, however, are not as categorical as Maberry represents them to be. Instead, the evaluator wrote that, if a reading test score "is below the recommended reading level," then "the undersigned *recommends* that the evaluator *take this into consideration* when administering the self-report tests, *perhaps* utilizing audio versions of the instruments or other methods recommended by the authors of the [various assessments]." (Emphases added.) As indicated by the word "perhaps," alternative methods are an option, not a requirement. Here, the evaluator's conclusion that "Maberry's reading level is completely insufficient to complete" the MSI-II shows that the evaluator followed the recommendation to consider Maberry's reading level. Although the evaluator did not explain why he did not pursue an alternative method of giving the MSI-II, there is nothing in the evaluator's comments that require this particular explanation. Consequently, Maberry has failed to show that the evaluator's explanation for not giving the MSI-II was not legitimate or that the district court erred by denying his motion for a second psychosexual evaluation.

## IV.

## CONCLUSION

Maberry has failed to show the district court erred in denying his motion for a new psychosexual evaluation. Accordingly, Maberry's judgment of conviction and sentences for three counts of sexual exploitation of a child are affirmed.

Judge GRATTON and Judge BRAILSFORD, **CONCUR**.

---

[3] In his reply brief, Maberry asserts that the State "ignores [a] critical statement made by th[e] evaluator" and that the "evaluator expressly advised that 'a person's low reading comprehension scores *do not justify not giving the test at all*, but rather should be compensated for by using alternative testing conditions.'" Maberry provides a citation to the record, but we have been unable to locate the purported quote from the evaluator. The only place this language appears (with minor changes in italicization) is in Maberry's opening brief, quoted above, which is Maberry's characterization of the evaluator's comments.