# IN THE COURT OF APPEALS OF THE STATE OF IDAHO

## Docket Nos. 39805/39806

| | |
|---|---|
| IN THE MATTER OF THE DRIVER'S LICENSE SUSPENSION OF CHAUNCEY JACK PLATZ | 2013 Opinion No. 35 |
| ---------------------------------------------------------- | Filed: June 6, 2013 |
| CHAUNCEY JACK PLATZ, | Stephen W. Kenyon, Clerk |
| Petitioner-Respondent, | |
| v. | |
| STATE OF IDAHO, TRANSPORTATION DEPARTMENT, | |
| Respondent-Appellant. | |

Appeal from the District Court of the Second Judicial District, State of Idaho, Latah County. Hon. John R. Stegner, District Judge.

Order vacating hearing officer's decision suspending driver's license, reversed.

Hon. Lawrence G. Wasden, Attorney General; Edwin L. Litteneker, Special Deputy Attorney General, Boise, for appellant. Edwin L. Litteneker argued.

James E. Johnson, Moscow, for respondent.

---

GRATTON, Judge

This opinion involves two related cases. In Docket No. 39805, the Idaho Transportation Department (ITD) appeals from the district court's decision, upon judicial review, vacating the administrative license suspension (ALS) of Chauncey Jack Platz's driver's license after he failed a blood alcohol concentration test. ITD claims the district court erred by determining that Platz was not properly monitored for fifteen minutes prior to administration of the breath test, in accordance with the Idaho State Police Standard Operating Procedure (SOP). ITD also claims the district court lacked jurisdiction to hear Platz's motion for a stay pending the hearing officer's findings of fact and conclusions of law.

1

In Docket No. 39806, ITD appeals from the district court's decision, upon judicial review, vacating the hearing officer's order disqualifying Platz's commercial driver's license (CDL) based upon the failed blood alcohol concentration test. ITD claims that if this Court affirms the hearing officer's order sustaining Platz's ALS, then it must affirm the hearing officer's order disqualifying Platz's CDL. Platz contends that his statutory and due process rights were violated when the CDL hearing officer refused to consider evidence submitted challenging the validity of the failed evidentiary test.

## I.

## FACTUAL AND PROCEDURAL BACKGROUND

On June 26, 2011, Platz was stopped for speeding and failing to wear a seatbelt. During the stop, Platz admitted he had been drinking. Idaho State Police Trooper Montgomery requested that Platz exit his vehicle and perform field sobriety tests. The trooper then informed Platz, prior to performing the field sobriety tests, that the fifteen-minute monitoring period had started in preparation for a breath test. The trooper, at this time, also checked Platz's mouth for anything that would affect a breath test. Platz subsequently failed the field sobriety tests and was asked to submit to a breath test. The breath test samples showed results of .201 and .191, and Platz was arrested for DUI. ITD later served Platz with a notice of administrative license suspension, pursuant to Idaho Code § 18-8002A, due to his failure of the breath test. Platz also received a notice of a CDL disqualification pursuant to I.C. § 49-335 that was dated July 5, 2011, and effective on July 26, 2011.

Platz requested an ALS hearing to contest his license suspension, which was held on July 18, 2011. During the hearing, Platz requested permission to submit supplemental argument on the fifteen-minute monitoring period. The hearing officer informed Platz his thirty-day temporary driving permit would not be extended through any additional period allowed for supplementation of his argument. On July 26, 2011, Platz filed his supplemental argument alleging that Trooper Montgomery was not always in a position to monitor Platz for the required fifteen minutes prior to the breath test. On the same day, Platz filed a motion with the hearing officer to stay his license suspension pending the hearing officer's decision, which was denied. On August 1, 2011, Platz filed a motion with the district court to stay his license suspension pending the hearing officer's decision. The district court granted Platz's motion on August 4, 2011. The hearing officer's findings of fact and conclusions of law and order was issued

2

August 4, 2011. The order sustained the suspension of Platz's driver's license. Platz filed a petition for judicial review and a motion to stay his license suspension pending judicial review. The stay was granted. On March 2, 2012, the district court vacated the ALS on the ground that the hearing officer's determination that the trooper complied with the fifteen-minute monitoring period was not supported by substantial and competent evidence.

On September 8, 2011, Platz requested an administrative hearing to contest his CDL disqualification. At the hearing, the hearing officer declined to consider evidence regarding the fifteen-minute observation period and sustained the disqualification. Platz timely filed a petition for judicial review of his CDL disqualification and was granted a stay pending the district court's review. The district court then consolidated the ALS and CDL proceedings and vacated the CDL disqualification because Platz's ALS was vacated, and thus he no longer had failed a test as required by I.C. § 49-335(2). ITD timely appealed in both cases.

## II.

## ANALYSIS

The Idaho Administrative Procedures Act (IDAPA) governs the review of ITD decisions to deny, cancel, suspend, disqualify, revoke, or restrict a person's driver's license. *See* I.C. §§ 49-201, 49-330, 67-5201(2), 67-5270. In an appeal from the decision of the district court acting in its appellate capacity under IDAPA, this Court reviews the agency record independently of the district court's decision. *Marshall v. Idaho Dep't of Transp.*, 137 Idaho 337, 340, 48 P.3d 666, 669 (Ct. App. 2002). This Court does not substitute its judgment for that of the agency as to the weight of the evidence presented. I.C. § 67-5279(1); *Marshall*, 137 Idaho at 340, 48 P.3d at 669. This Court instead defers to the agency's findings of fact unless they are clearly erroneous. *Castaneda v. Brighton Corp.*, 130 Idaho 923, 926, 950 P.2d 1262, 1265 (1998); *Marshall*, 137 Idaho at 340, 48 P.3d at 669. In other words, the agency's factual determinations are binding on the reviewing court, even where there is conflicting evidence before the agency, so long as the determinations are supported by substantial and competent evidence in the record. *Urrutia v. Blaine County, ex rel. Bd. of Comm'rs*, 134 Idaho 353, 357, 2 P.3d 738, 742 (2000); *Marshall*, 137 Idaho at 340, 48 P.3d at 669.

The Court may overturn an agency's decision where its findings, inferences, conclusions, or decisions: (a) violate statutory or constitutional provisions; (b) exceed the agency's statutory authority; (c) are made upon unlawful procedure; (d) are not supported by substantial evidence in

3

the record; or (e) are arbitrary, capricious, or an abuse of discretion. I.C. § 67-5279(3). The party challenging the agency decision must demonstrate that the agency erred in a manner specified in I.C. § 67-5279(3) and that a substantial right of that party has been prejudiced. *Price v. Payette County Bd. of County Comm'rs*, 131 Idaho 426, 429, 958 P.2d 583, 586 (1998); *Marshall*, 137 Idaho at 340, 48 P.3d at 669. If the agency's decision is not affirmed on appeal, "it shall be set aside . . . and remanded for further proceedings as necessary." I.C. § 67-5279(3).

The administrative license suspension statute, I.C. § 18-8002A, requires that ITD suspend the driver's license of a driver who has failed a BAC test administered by a law enforcement officer. The period of suspension is ninety days for a driver's first failure of an evidentiary test and one year for any subsequent test failure within five years. I.C. § 18-8002A(4)(a). A person who has been notified of an ALS may request a hearing before a hearing officer designated by ITD to contest the suspension. I.C. § 18-8002A(7); *Kane v. State, Dep't of Transp.*, 139 Idaho 586, 590, 83 P.3d 130, 134 (Ct. App. 2003). The hearing officer must uphold the suspension unless he or she finds, by a preponderance of the evidence, that the driver has shown one of several grounds enumerated in I.C. § 18-8002A(7) for vacating the suspension. Those grounds are:

> (a) The peace officer did not have legal cause to stop the person; or
> (b) The officer did not have legal cause to believe the person had been driving or was in actual physical control of a vehicle while under the influence of alcohol, drugs or other intoxicating substances in violation of the provisions of section 18-8004, 18-8004C or 18-8006, Idaho Code; or
> (c) The test results did not show an alcohol concentration or the presence of drugs or other intoxicating substances in violation of section 18-8004, 18-8004C or 18-8006, Idaho Code; or
> (d) The tests for alcohol concentration, drugs or other intoxicating substances administered at the direction of the peace officer were not conducted in accordance with the requirements of section 18-8004(4), Idaho Code, or the testing equipment was not functioning properly when the test was administered; or
> (e) The person was not informed of the consequences of submitting to evidentiary testing as required in subsection (2) of this section.

I.C. § 18-8002A(7). The hearing officer's decision is subject to challenge through a petition for judicial review. I.C. § 18-8002A(8); *Kane*, 139 Idaho at 589, 83 P.3d at 133. The burden of proof at an ALS hearing is on the individual requesting the hearing. *Kane*, 139 Idaho at 590, 83 P.3d at 134.

4

A.      **Administrative License Suspension**

1.      **Fifteen-minute monitoring period**

Pursuant to I.C. § 18-8004(4), the Idaho State Police (ISP) are charged with promulgating standards for administering tests for breath alcohol content. *State v. DeFranco*, 143 Idaho 335, 337, 144 P.3d 40, 42 (Ct. App. 2006). To carry out the authority conferred by that statute, the ISP issued operating manuals as well as the SOP for the maintenance and operation of breath test equipment. *In re Mahurin*, 140 Idaho 656, 658, 99 P.3d 125, 127 (Ct. App. 2004). Noncompliance with these procedures is a ground for vacating an administrative license suspension under I.C. § 18-8002A(7)(d). *Mahurin*, 140 Idaho at 658-59, 99 P.3d at 127-28.

The ISP posts its standard operating procedures and training and reference manuals on its website, and it amends these documents from time to time. Here, we address the administrative rules, standard operating procedures, and manuals in effect at the time of Platz's breath tests. We have treated those documents as "rules" for purposes of judicial review because they constitute the only materials by which the ISP has acted upon the Idaho Code § 18-8002A(3) authorization for the ISP to "prescribe by rule" testing instruments and methods that are approved by the ISP. *In re Hubbard*, 152 Idaho 879, 881-82, 276 P.3d 751, 753-54 (Ct. App. 2012); *In re Schroeder*, 147 Idaho 476, 479 n.3, 210 P.3d 584, 587 n.3 (Ct. App. 2009).[1]

At the time of Platz's arrest, the applicable SOP for breath alcohol testing provided that "[p]rior to evidentiary breath alcohol testing, the subject/individual should be monitored for at least fifteen (15) minutes. . . . During the monitoring period the subject/individual should not be allowed to smoke, drink, eat, or belch/burp/vomit/regurgitate." 6.0 Idaho Standard Operating Procedure Breath Alcohol Testing, Section 6.1. The SOP notes that "[d]uring the monitoring period, the Operator must be alert for any event that might influence the accuracy of the breath alcohol test." Section 6.1.4. "If mouth alcohol is suspected or indicated, the Operator should begin another 15-minute waiting period before repeating the testing sequence." Section 6.1.4.1. If the subject vomits or regurgitates, the fifteen-minute period must begin again. Section 6.1.4.2. Pursuant to Section 6.1.4.3, if there is doubt as to events occurring during the monitoring period,

---

[1]      Although we have treated the ISP standard operating procedure and manuals as "rules" for purposes of our judicial review, we have never held that these materials actually constitute "rules" or that the ISP has thereby "prescribed by rule" testing instruments and methods as contemplated by Idaho Code § 18-8002A(3).

the officer should look at the results of the two samples for evidence of potential mouth alcohol contamination, and the officer is referred to Section 6.2.2.2. Section 6.2.2.2 states that "[t]he results for duplicate breath samples should correlate within 0.02 to indicate the absence of alcohol contamination in the subject/individual's breath pathway . . . ."

This Court addressed the monitoring requirement of the fifteen-minute monitoring period in *Bennett v. State, Dep't of Transp.*, 147 Idaho 141, 206 P.3d 505 (Ct. App. 2009). We noted that the purpose of the monitoring period is to rule out the possibility that alcohol or other substances have been introduced into the subject's mouth from the outside or by belching or regurgitation. *Id.* at 144, 206 P.3d at 508. *See also State v. Carson*, 133 Idaho 451, 453, 988 P.2d 225, 227 (Ct. App. 1999). To satisfy the monitoring requirement, the level of surveillance "must be such as could reasonably be expected to accomplish" that purpose. *Bennett*, 147 Idaho at 144, 206 P.3d at 508. Furthermore, in *DeFranco*, this Court commented that the fifteen-minute monitoring period is not an onerous burden and that "[t]his foundational standard ordinarily will be met if the officer stays in close physical proximity to the test subject so that the officer's senses of sight, smell and hearing can be employed." *DeFranco*, 143 Idaho at 338, 144 P.3d at 43. Therefore, "[s]o long as the officer is continually in [a] position to use his senses, not just sight, to determine that the defendant did not belch, burp or vomit during the [monitoring] period, the observation complies with the training manual instructions." *Bennett*, 147 Idaho at 144, 206 P.3d at 508; *cf. Carson*, 133 Idaho at 453, 988 P.2d at 227 (holding that the arresting officer's ability to supplement his visual monitoring of Carson with his other senses was substantially impaired by numerous sources of noise, the officer's own hearing impairment, and his position facing away from Carson while transporting him during the monitoring period).

The hearing officer, in the findings of fact and conclusions of law and order, addressed whether the evidentiary test was performed in compliance with the Idaho Code and the SOP. The hearing officer found:

1. The affidavit submitted by Officer Montgomery states the evidentiary test was performed in compliance with Idaho Law and ISP Standard Operating Procedures.
2. Idaho State Police Standard Operating Procedure, Rule 6.1, provides that "[P]rior to evidential breath alcohol testing, the subject/individual should be monitored for at least fifteen (15) minutes." This waiting period allows sufficient time for any mouth alcohol to dissipate.
3. Counsel for Platz argues that all of the Standard Operating Procedures "must" be observed for the test results to be admissible. However, the

6

Standard Operating Procedure, Rule 6.1, sets forth recommended language ("should") rather than mandatory language, and therefore, strict compliance with the recommended language shall not bear the sufficient weight to suppress the evidentiary test results.

4. Platz argues that he was not closely observed during the fifteen minute waiting period and the duration may not have been for the full fifteen minutes.

5. An acceptable breath alcohol test normally includes two breath samples separated by a difference of .02 or less, and if this condition exists, the consistent and similar BRAC results of .201 and .191 confirms that no residual mouth alcohol was present nor was there any other foreign substances present which may have skewed the breath test results or influenced the reliability of the test.

6. In *Bennett v. State of Idaho, Department of Transportation*, 147 Idaho 141 (App. 2009), the Court of Appeals clarified that during the 15-minute observation period "[T]he level of surveillance must be such as could reasonably be expected to accomplish the purpose of the requirement. In light of the purposes of the requirement, 'observation' can include not only visual observation but use of other senses as well. So long as the officer is continually in position to use his senses, not just sight, to determine that the defendant did not belch, burp or vomit during the observation period, the observation complies with the training manual instructions. In this regard, the officer need not 'stare fixedly' at the subject for the entire observation period." Based on the record and a review of the video/audio recording of the investigation, it has not been definitively shown that Officer Montgomery did not follow the requisite procedures regarding the 15-minute observation period. Brief conversations by Platz with a backup officer did not significantly impede the ability of Officer Montgomery to monitor Platz at the scene.

7. The Petitioner, Platz, did not affirmatively show by a preponderance of the evidence that the test was not performed in compliance with Idaho Law and ISP Standard Operating Procedures.

8. The evidentiary test was performed in compliance with Idaho Law and ISP Standard Operating Procedures.

The district court, on judicial review, vacated the license suspension. The district court held that the findings of the hearing officer were not supported by substantial and competent evidence in the record because the trooper did not adequately monitor Platz during the fifteen-minute period. As noted, this Court "reviews the agency record independently of the district court's decision." In this case, no testimony was presented to the hearing officer. The agency record thus consists of the officer's probable cause affidavit, in which he stated he complied with required procedures, and the videotape from the officer's vehicle. With that limited record, Platz asked the district court and this Court, on review, to simply look at the videotape and decide for

7

ourselves if a violation is shown. On the other hand, ITD submits that in such case the driver fails in his burden because there is nothing presented with which to challenge the hearing officer's determination other than simply to re-weigh the evidence, which our standard of review precludes, and, moreover, the reviewing court is to look at the entire record from the eyes of the hearing officer.

The reviewing court, including the district court on intermediate appeal, does not substitute its judgment for that of the agency as to the weight of the evidence presented. The court instead defers to the agency's findings of fact unless they are clearly erroneous. The agency's factual determinations are binding on the reviewing court, even where there is conflicting evidence before the agency, so long as the determinations are supported by substantial and competent evidence in the record. *Marshall*, 137 Idaho at 340, 48 P.3d at 669. We do not substitute our view of the evidence for that of the hearing officer. However, we still review the evidence in the record to determine whether the hearing officer's factual findings are supported by substantial and competent evidence. Clearly erroneous factual findings are not entitled to our deference.

Platz asserts that, during the monitoring period, the trooper was not at all times in a position to utilize his senses to adequately monitor him. Platz points first to the circumstances of conducting the field sobriety tests during the monitoring period. While the trooper demonstrated the walk and turn evaluation, the trooper turned away from Platz and continued the demonstration. This occurrence lasted approximately seven seconds. Next, Platz walked away from the trooper as he performed the walk and turn evaluation. As Platz continued his movement away from the trooper, an airplane can be heard overhead. However, once the airplane can be heard, the trooper takes three steps closer to Platz. During his walk and turn evaluation, Platz had his back turned to the trooper for approximately six seconds.

This Court recently dealt with the issue of an officer turning his back to the suspect during the fifteen-minute monitoring period in *Wilkinson v. State, Dep't of Transp.*, 151 Idaho 784, 788, 264 P.3d 680, 684 (Ct. App. 2011). Wilkinson claimed that the monitoring period was invalid because: (1) of the sound of the CD advisory playing; (2) the officer's radio earpiece in his ear; (3) the fact that the officer's attention was "diverted" several times; and (4) that the officer was not at all times close enough to hear or smell a burp or belch. *Id*. We noted that the hearing officer heard and rejected these arguments upon reviewing all of the evidence, including

the videotape. *Id*. There, the officer had his back turned to Wilkinson for one minute and fifty seconds of the fifteen-minute period, but that length of time did not void the test results as the hearing officer determined that the officer could hear Wilkinson while his back was turned.[2] *Id*. The trooper was in close proximity to Platz during the demonstration and evaluation. The brief periods in which the trooper had his back turned were less than what occurred in *Wilkinson* and, although Wilkinson was in a room as opposed to outside, the trooper here could employ his hearing for the few seconds his back was turned. He could also observe Platz's body movements that would have indicated if a belch or regurgitation occurred.

Platz next asserts that the trooper did not adequately monitor him during a time not captured on the video when the trooper obtained paperwork and the breath-testing device from his vehicle. After Trooper Montgomery determined Platz had failed the field sobriety tests, he walked over to his car. The trooper picked up some paperwork and the breath-testing device from his vehicle's passenger side. During this occurrence, however, the trooper had Platz walk with him to the side of the vehicle such that they were both out of view of the camera. The trooper continued his conversation with Platz, demonstrating that Platz could be readily heard, if not seen, by the trooper.

Platz argues that the environmental conditions existing during the roadside monitoring were sufficient to overcome the trooper's ability to employ his senses to adequately monitor him. The vehicles, the officer, and Platz were in an area off the side of the roadway. During the stop, numerous cars drove by and airplanes overhead can be heard on several occasions. Obviously, these conditions are not readily conducive to monitoring for the possibility that alcohol or other substances have been introduced into the subject's mouth from belching or regurgitation. However, to satisfy the monitoring requirement, the level of surveillance "must be such as could reasonably be expected to accomplish" that purpose. *Bennett*, 147 Idaho at 144, 206 P.3d at 508. The noises heard in the video were typically not loud enough to affect the conversation between

---

[2]  Appropriately, this Court further stated that: "It should be noted that although constant visual contact is not required, the rule's flexibility is not an open invitation for law enforcement officers to be inattentive or to leave suspects out of their sight for any appreciable period of time." *Wilkinson*, 151 Idaho at 788, 264 P.3d at 684. We further caution here that roadside monitoring inherently presents environmental impediments and distractions which, without due care, may sufficiently compromise the adequacy of the monitoring so as to void the test results.

the trooper and Platz. At no time did either express or physically exhibit an inability to communicate. On two occasions, the trooper had to raise his voice to be heard, but on each occasion the trooper was facing Platz and nearby, and on one occasion moved closer. Even if the trooper's hearing was overcome, his sight was not.

Prior to administering the breath test, Trooper Montgomery read Platz the advisory form. During this time, the trooper kept his eyes on the advisory form and could not visually monitor Platz. However, the trooper stood just to the side of Platz in front of the officer's vehicle. Shortly thereafter, the trooper began to prepare the breath-testing machine. The trooper had his head down during this time as well, but remained in the same position. In *State v. Remsburg*, 126 Idaho 338, 341, 882 P.2d 993, 996 (Ct. App. 1994), this Court held that brief diversion of attention to program the machine and read the advisory did not preclude compliance with the observation period.

The hearing officer, based upon the trooper's affidavit[3] and the videotape, determined that the trooper adequately monitored Platz for the requisite time period. We cannot say that the hearing officer's factual findings are clearly erroneous. Thus, the hearing officer's determination that the trooper adequately monitored Platz is supported by substantial and competent evidence in the record. Platz did not sustain his burden in demonstrating a lack of adequate monitoring.

## 2. Stay pending review

At the time that suspension of Platz's license would become effective by statute, I.C. § 18-8002A(4)(b), Platz filed supplemental argument with the hearing officer and a motion to stay the suspension pending decision by the hearing officer. The hearing officer denied the motion for stay. Platz then filed a motion for stay of the license suspension with the district court, which was granted. On the same day, the hearing officer issued his decision upholding the suspension of Platz's driver's license. Thereafter, Platz filed a petition for review with the district court and obtained another stay pending review by the district court. The parties have briefed and argued the propriety of the stay issued by the district court pending the hearing officer's decision. We view the issue as moot, as we can effectively grant no relief. *See State v.*

---

[3] The statement in the trooper's affidavit that "[t]he test(s) was/were performed in compliance with Section 18-8003 & 18-8004(4), Idaho Code, and the standards and methods adopted by the Department of Law Enforcement" is of only the most marginal evidentiary value because it is conclusory. Its meaning depends upon what, *in the trooper's understanding or opinion,* constitutes compliance with applicable standards.

10

*Manzanares*, 152 Idaho 410, 419, 272 P.3d 382, 391 (2012). This issue is, however, likely to evade judicial review and thus is capable of repetition and, therefore, we will generally address stays in this context. *See Koch v. Canyon County*, 145 Idaho 158, 163, 177 P.3d 372, 377 (2008).

In *Bell v. Idaho Transp. Dep't*, 151 Idaho 659, 670, 262 P.3d 1030, 1041 (Ct. App. 2011), we held that delays in the administrative hearing process, not contributed to by the person requesting the hearing, which caused the suspension to take effect long before the issuance of a decision by the hearing officer, could constitute a deprivation of due process. We also noted that the statute was originally designed to provide a predeprivation process:

> The Idaho Legislature provided in I.C. § 18-8002A a system that, if adhered to, is geared to yield a predeprivation adjudication of a challenge to a license suspension. That is, the legislative scheme allows time for a hearing and a decision from the hearing officer before the suspension takes effect. First, Idaho Code § 18-8002A(4)(b) provides that a driver whose license has been seized will be given a thirty-day driving permit. The driver wishing to challenge a suspension may request a hearing within seven days, whereupon I.C. § 18-8002A(7) requires that a hearing be conducted within twenty days from the driver's request. This scheme allows at least three days for the hearing officer to render a decision before a suspension takes effect. At the time of Bell's hearing, ITD's administrative rules provided that a hearing officer "shall issue the Findings of Fact, Conclusions of Law and Order prior to the expiration of the thirty (30) day temporary permit." IDAPA 39.02.72.600.01 (2009).

*Id*. at 670-71, 262 P.3d at 1041-42 (footnotes omitted). The provision requiring issuance of the decision within the thirty-day time period has since been eliminated. Given the elimination of this provision, and for a variety of reasons which may or may not be substantially contributed to by the driver, the decision may be issued after the suspension takes effect. Thus, considering the due process concerns we noted in *Bell*, the ability to obtain a stay may play an important role in the analysis.

Idaho Code § 18-8002A does not provide a driver with a mechanism to stay an impending license suspension. However, administrative rules do authorize a stay from the agency: "Any party or person affected by an order may petition the agency to stay any order, whether interlocutory or final. Interlocutory or final orders may be stayed by the judiciary according to statute. The agency may stay any interlocutory or final order on its own motion." IDAPA 04.11.01.780. Thus, it is within the hearing officer's discretion to either grant or deny a stay.

11

If the hearing officer chooses to deny the stay, then the driver may appeal that interlocutory decision to the district court under I.C. § 67-5271(2), which states: "A preliminary, procedural, or intermediate agency action or ruling is immediately reviewable if review of the final agency action would not provide an adequate remedy." We noted in *Bell* that a driver may suffer an irremediable and unacceptable loss of driving privileges before issuance of the hearing officer's decision, particularly in the case where the driver ultimately prevails. *Bell*, 151 Idaho at 671, n.6, 262 P.3d at 1042 n.6. The specter of this irremediable loss may provide the basis for immediate review of the intermediate agency decision.

While I.C. § 67-5271(2) may provide an avenue into the district court to obtain review of the hearing officer's denial of a stay, the impending suspension may still take effect until there is action from the district court. Idaho Code § 67-5274 provides, "The filing of the petition for review does not itself stay the effectiveness or enforcement of the agency action. The agency may grant, or the reviewing court may order, a stay upon appropriate terms." Idaho Rule of Civil Procedure 84 governs judicial review of agency actions by the district court. Specifically, I.R.C.P. 84(m) states, in pertinent part, "Unless prohibited by statute, the agency may grant, or the reviewing court may order, a stay upon appropriate terms." The language allowing a reviewing court to grant a stay used in I.R.C.P. 84(m) tracks the language used in I.C. § 67-5274. However, while that language only refers to "petitions for review," Rule 84 makes clear that judicial review includes "appeals" to the district court as well. I.R.C.P. 84(a)(2)(C).

Through the procedure outlined above, the district court, on judicial review, may review the hearing officer's order denying a stay, or the court may issue its own stay. Perhaps, technically, a stay issued by the district court could be argued as merely a stay of the order denying a stay, having no practical effect on the automatic suspension at the conclusion of the thirty-day period. However, that reading of the statute and rule providing for a stay is unduly narrow. The obvious effect of a hearing officer's denial of a stay when the decision is not issued within the thirty-day window is suspension. We conclude, therefore, that the interplay between IDAPA, the Idaho Rules of Civil Procedure, and applicable Idaho Code provisions authorize the district court to stay the license suspension in this situation.

12

We are not unmindful of the cumbersomeness of the above-outlined procedures. However, absent modification of ITD's rules and procedures, we are aware of no other method that may be employed to avoid a potential due process deprivation.[4]

## B.  Commercial Driver's License

ITD argues that this Court's determination in Platz's ALS case should control whether his CDL disqualification is affirmed or reversed. Platz claims his due process rights were violated because the hearing officer would not consider his evidence regarding the failed breath test. Platz's other issues on appeal are all related to his first claim of error: (1) whether the hearing officer's decision was supported by sufficient and competent evidence; and (2) whether the hearing officer's decision process demonstrated an abuse of discretion.

This appeal requires us to consider the interplay of several statutes governing the driving privileges of drivers who are requested to submit to evidentiary testing. Idaho Code § 18-8002 prescribes the penalties governing all aspects of a driver's driving privileges in the event of a refusal to submit to or complete evidentiary testing. I.C. § 18-8002(4)(a)-(c). A judge, rather than ITD, determines whether a motorist's driver's license will be suspended. I.C. § 18-8002(4)(b), (c). Idaho Code § 18-8002A prescribes the penalties governing all aspects of a driver's driving privileges in the event that the motorist submits to, but fails, evidentiary testing. I.C. § 18-8002A(4)(a). This suspension is imposed by ITD and the statute provides for administrative review of the suspension. I.C. § 18-8002A(4) and (7). The statute further grants the right of judicial review of the decision made by the administrative hearing officer. I.C. § 18-8002A(8).

---

[4]     We do not here intimate that every motion for stay to a hearing officer or district court must or should be granted or is necessary under a due process analysis, even if pre-decision suspension occurs. However, we expressed our concern regarding pre-decision suspension in *Bell* as follows:

> Although Bell's repeated requests for irrelevant discovery contributed somewhat to the hearing postponements, the delays involved here are troubling to this Court. The actions of the hearing officer evidence little regard for Bell's substantial interest in receiving a decision before, or at least promptly after, the deprivation of his license.

*Bell v. Idaho Transp. Dep't*, 151 Idaho 659, 671, 262 P.3d 1030, 1042 (Ct. App. 2011).

The motor vehicle code prescribes additional consequences which result from a driver's refusal to submit to evidentiary testing or failing such testing. These additional consequences solely relate to the ability to operate commercial vehicles. Idaho Code § 49-335(2) provides:

> Any person who operates a commercial motor vehicle or who holds a class A, B or C driver's license is disqualified from operating a commercial motor vehicle for a period of not less than one (1) year if the person refuses to submit to or submits to and fails a test to determine the driver's alcohol, drug or other intoxicating substances concentration while operating a motor vehicle.

Idaho Code § 49-326(4) provides the opportunity for the affected driver to request an administrative hearing to challenge a commercial driver's license disqualification completely independent of the provisions found in Title 18. The driver is provided the right of judicial review from an adverse decision by the hearing officer. I.C. § 49-330.

Here, Platz's counsel asked the CDL hearing officer if he had reviewed the packet of documents he had submitted. The hearing officer responded that he had received some documents, but had not reviewed the materials "because they're really not relevant to these proceedings. . . . [A]nd this hearing is not a review of the ALS and I will not revisit the facts surrounding the ALS. That's outside the scope of these proceedings. You only get one bite at that apple." The hearing officer read I.C. § 49-335(2) to only require a determination as to whether Platz possessed a CDL and whether Platz failed an evidentiary test.

Platz exercised his right of judicial review, pursuant to I.C. § 49-330, from the adverse decision by the hearing officer. By the time Platz's CDL disqualification was up for judicial review, the district court had already reviewed and vacated Platz's ALS suspension. The district court's prior act of vacating Platz's ALS thus removed one of the elements of I.C. § 49-335(2), i.e., Platz "fail[ed] a test to determine the driver's alcohol . . . concentration." The district court then vacated Platz's CDL disqualification for that reason.

As noted, I.C. § 49-335(2) provides, in pertinent part, "[a]ny person who operates a commercial motor vehicle or who holds a class A, B or C driver's license is disqualified from operating a commercial motor vehicle for a period of not less than one (1) year if the person . . . submits to and fails a test to determine the driver's alcohol . . . concentration." Thus, under a strict reading, to disqualify Platz's CDL under I.C. § 49-335(2) the hearing officer need only determine: (1) whether Platz possessed a CDL; and (2) whether Platz failed a test to determine alcohol concentration. In this case, the hearing officer answered these questions by giving

14

preclusive effect to another hearing officer's decision in the prior ALS hearing. The CDL hearing officer, in effect, applied res judicata principles to preclude relitigation of the same issues in the second hearing. The doctrine of res judicata encompasses both claim preclusion (true res judicata) and issue preclusion (collateral estoppel). *Ticor Title Co. v. Stanion*, 144 Idaho 119, 123, 157 P.3d 613, 617 (2007); *Hindmarsh v. Mock*, 138 Idaho 92, 94, 57 P.3d 803, 805 (2002). Claim preclusion bars a subsequent action between the same parties upon the same claim, and issue preclusion protects litigants from relitigating an identical issue with the same party or its privy. *Ticor*, 144 Idaho 123, 157 P.3d at 617; *Rodriguez v. Dep't of Corr.*, 136 Idaho 90, 92, 29 P.3d 401, 403 (2001). Idaho law permits application of res judicata to administrative decisions. *Sagewillow v. Idaho Dep't of Water Res.*, 138 Idaho 831, 844, 70 P.3d 669, 682 (2003); *Hansen v. Estate of Harvey*, 119 Idaho 333, 336, 806 P.2d 426, 429 (1991); *J & J Contractors/O.T. Davis Constr., A.J.V. v. State, Idaho Transp. Bd.*, 118 Idaho 535, 537, 797 P.2d 1383, 1385 (1990).

Platz nevertheless claims that at a CDL disqualification hearing, a driver should be allowed to present evidence regarding the failed evidentiary test. Platz specifically argues that the statutes and due process grant him the right in both the ALS and the CDL hearings to assert that he did not fail a valid evidentiary test. Platz also contends the hearing officer abused his discretion by not reviewing the evidence presented regarding the evidentiary test.

The Idaho Supreme Court recently addressed the relationship between I.C. §§ 18-8002A and 49-335 in *Wanner v. State, Dep't of Transp.*, 150 Idaho 164, 244 P.3d 1250 (2011). The issue in *Wanner* was whether the driver failed to exhaust administrative remedies with respect to a claim that insufficient notice was provided, for due process purposes, of the CDL disqualification. There the Court stated:

> Wanner argues that the notice provided by I.C. § 18-8002A did not meet the dictates of due process. This, he argues, excuses his untimely filing. However, Wanner does not attempt to explain how his due process rights have been violated by the suspension of his driver's license by operation of I.C. § 18-8002A; rather, his argument focuses on the consequences to his CDL (the one-year disqualification from the right to operate a commercial motor vehicle mandated by I.C. § 49-335(2)). It is clear that Wanner does not seek to avoid the driver's license suspension; rather, he seeks to avoid the one-year disqualification of his commercial driving privileges. This is a consequence of the failed evidentiary test that is independent and distinct from the suspension of Wanner's license under I.C. § 18-8002A.

15

Our interpretation of these as two separate issues is based upon the language of the relevant statutes. Idaho Code § 18-8002A refers to the suspension of "the person's driver's license" and specifies the possibility of a temporary permit after thirty days. I.C. § 18-8002A(5)(a). By contrast, I.C. § 49-335 provides that the holder of a CDL "is disqualified from operating a commercial motor vehicle . . ." I.C. § 49-335(2). Thus, the [§] 18-8002A suspension governs Wanner's driving privileges in toto, while the [§] 49-335 suspension only applies to a particular subset of driving privileges, i.e., Wanner's right to operate a commercial vehicle.

*Wanner*, 150 Idaho at 169-70, 244 P.3d at 1255-56.

Platz contends the Idaho Supreme Court's statement in *Wanner* that the CDL is "independent and distinct from the [ALS] suspension of Wanner's license under I.C. § 18-8002A" establishes that he was entitled to litigate the validity of the evidentiary test in both the ALS and CDL proceedings. Platz asserts that he is entitled to challenge the evidentiary test in both proceedings because they are statutorily separate proceedings and, consequently, since the CDL disqualification is based upon a failed evidentiary test, due process dictates that he be entitled to challenge the test in the CDL proceeding.

We disagree. While *Wanner* referred to the separate and distinct processes of contesting an ALS and a CDL disqualification, nothing therein precludes the ALS evidentiary test determination from applying in the CDL proceeding. Statutorily, I.C. § 18-8002A(7) lists the grounds for vacating a suspension, including where, as claimed in this case, "[t]he tests for alcohol concentration, drugs or other intoxicating substances administered at the direction of the peace officer were not conducted in accordance with the requirements of section 18-8004(4), Idaho Code, or the testing equipment was not functioning properly when the test was administered." On the other hand, I.C. § 49-335 does not expressly set forth bases for challenging the evidentiary test, only that the driver "fail[ed] a test to determine the driver's alcohol . . . concentration." Thus, while the ALS and CDL proceedings are separate, the grounds expressed for challenging an evidentiary test are set forth in I.C. § 18-8002A(7). Application of the ALS evidentiary test determination to substantiate or void reliance on the evidentiary test as a basis for CDL disqualification is not *precluded* by the statutory structure or *Wanner*. In fact, statutorily, the ALS appears to be the proceeding contemplated for an evidentiary test challenge.

Further, contrary to Platz's assertion, neither the statutes nor due process *require* that Platz have the opportunity to challenge the validity of the evidentiary test in both the ALS and

16

CDL proceedings. In *Bell*, 151 Idaho 659, 262 P.3d 1030, the Idaho Supreme Court held a driver is entitled to procedural due process because an ALS involves state action that adjudicates important interests of the licensees. *Bell*, 151 Idaho at 664-65, 262 P.3d at 1035-36 (citing *Dixon v. Love*, 431 U.S. 105, 112 (1977); *State v. Ankney*, 109 Idaho 1, 3-4, 704 P.2d 333, 335-36 (1985); *In re Gibbar*, 143 Idaho 937, 945, 155 P.3d 1176, 1184 (Ct. App. 2006)). We conclude that the same rights attach relative to a CDL proceeding.

In a due process analysis, courts must consider three factors in procedural due process challenges:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Mathews v. Eldridge*, 424 U.S. 319, 335 (1976). Idaho's appellate courts have considered the *Mathews* factors in the context of administrative license suspension hearings and have found that while an individual does have a substantial interest in his or her license, that interest may be subordinated by the State's interest in preventing intoxicated persons from driving, particularly where the individual is entitled to review procedures. *See Ankney*, 109 Idaho at 4-5, 704 P.2d at 336-37 (concluding that the then-applicable statute, I.C. § 49-352, which enabled a police officer to seize a person's driver's license prior to a hearing, did not violate procedural due process because there was not a high risk of erroneous deprivation where the statute provided for a prompt post-seizure review, coupled with the requirement that the police officer requesting the evidentiary test have reasonable grounds to believe the driver is intoxicated); *see also In re McNeely*, 119 Idaho 182, 190-91, 804 P.2d 911, 919-20 (Ct. App. 1990) (concluding that the notice provided by the advisory form, as set forth in the applicable statute, did not violate the driver's procedural due process).

In a typical situation, like the present case, the driver requests hearings to contest both the ALS and the CDL disqualification. As a matter of practice, the CDL disqualification rises and falls with the determination made in the ALS. In this case, the district court described the situation as follows: "[T]he ALS is the overarching set and the CDL is a subset of that set. So that if I conclude that the ALS was inappropriately decided and remand that, it strikes me that the

17

CDL, as a subset of that determination, would then also be remanded for a determination, or redetermination." The ITD attorney stated that "I think that it is clear that if the ALS suspension is vacated, the CDL disqualification goes away" and "if there is a vacated ALS suspension, it cannot be the basis of a CDL disqualification."[5] This matter was handled in the district court as outlined above. Considering the *Mathews* factors, we can discern no due process violation in this regard. So long as due process is afforded in the ALS proceeding, making the ALS determination applicable to the CDL disqualification appears to create little risk of an erroneous deprivation. Also, we see no "probable value" of an additional determination in the CDL.[6] *See Mathews*, 424 U.S. at 335.

## III.

## CONCLUSION

Substantial evidence exists in the record to support the hearing officer's findings that the trooper properly conducted the fifteen-minute monitoring period. Therefore, we reverse the district court's order upon judicial review vacating the hearing officer's decision suspending Platz's driver's license. The process employed, which makes the ALS evidentiary test validity determination applicable to the CDL disqualification, did not violate Platz's statutory or due process rights. Because we have reversed the district court's order vacating the suspension of Platz's driver's license in the ALS appeal, we further reverse the district court's order vacating the disqualification of Platz's commercial driving privileges.

---

[5] Platz's initial reluctance to agree that the ALS determination may have any applicability to the CDL proceeding is understandable in light of the absence of statutory or administrative rules and procedures which outline the process.

[6] Under the circumstances, the CDL hearing officer's refusal to consider the evidence submitted regarding the validity of the evidentiary test did not constitute an abuse of discretion or violate Platz's due process rights.

18

Judge LANSING, **SPECIALLY CONCURRING**

These consolidated cases amply demonstrate that the procedures to challenge administrative driver's license suspensions and commercial driving privileges that are mandated by statute and that have evolved administratively are cumbersome, redundant, and unnecessarily time-consuming, and therefore unnecessarily expensive for both the driver and ITD. The interests of all participants would be well served by a thorough revision of the statutes and administrative rules to interject more coherence, coordination, and efficiency into the process and ensure its overall fairness.

Judge MELANSON **CONCURS** in the special concurrence.

Judge MELANSON, **SPECIALLY CONCURRING**

I fully concur. I write separately to express my view regarding observance of the fifteen-minute monitoring period prior to administering the test to determine breath alcohol concentration. Pursuant to I.C. § 18-8004(4), the Idaho State Police are charged with promulgating standards for administering tests for breath alcohol content. The Idaho State Police Standard Operating Procedure (SOP) for breath alcohol testing provides that the subject should be monitored for at least fifteen minutes prior to administering the test. During that time the subject should not be allowed to "smoke, drink, eat, or belch/burp/vomit/regurgitate." SOP 6.1 (Nov. 1, 2010). The SOP notes that "during the monitoring period the Operator must be alert for any event that might influence the accuracy of the breath alcohol test." *Id.* at 6.1.4.[1] The purpose of the fifteen-minute waiting period is to rule out the possibility that alcohol or other substances have been introduced into the subject's mouth from the outside or from belching or regurgitation. *Bennett v. State, Dep't of Transp.*, 147 Idaho 141, 144, 206 P.3d 505, 508 (Ct. App. 2009); *State v. Carson*, 133 Idaho 451, 453, 988 P.2d 225, 227 (Ct. App. 1999). To satisfy the monitoring requirement, the level of surveillance must be such as could reasonably be expected to accomplish that purpose. *Bennett*, 147 Idaho at 144, 206 P.3d at 508. The burden is not onerous, and the "foundational standard ordinarily will be met if the officer stays in close physical proximity to the test subject so that the officer's senses of sight, smell and hearing can be employed." *State v. DeFranco*, 143 Idaho 335, 338, 144 P.3d 40, 43 (Ct. App. 2006). However, we have held that the rule's flexibility is not an open invitation for law enforcement

---

[1]     The current SOP, effective January 2013, has changed the "must" in 6.1.4 to "should."

officers to be inattentive or to leave suspects out of their sight for any appreciable time and a better practice would counsel that officers should attend to suspects to the best of their ability, including visual observation, throughout the entire monitoring period. *Wilkinson v. State, Dep't of Transp.*, 151 Idaho 784, 788, 264 P.3d 680, 684 (Ct. App. 2011). In my view, we require no more than common sense. When officers conduct the fifteen-minute monitoring period at the side of a busy highway or in any other place where their attention might be diverted or their hearing or other senses might be diminished by environmental factors, they should take care to be more attentive to the subject. By this, I do not mean to suggest that the officer should stare fixedly at the subject. In my view, all that is required is attentive observation. For example, under these circumstances, there is no reason officers could not perform field sobriety tests and read the advisory form before beginning the monitoring period and there is no reason officers could not wait until after the monitoring period to fill out paperwork. I think it is appropriate to caution that multitasking by an officer during the monitoring period may save a few minutes but it may, given the right facts in evidence, result in a test being invalidated and further may cost Idaho taxpayers thousands of dollars for processing appeals like this one.

Judge LANSING **CONCURS** in the special concurrence.