**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 41325**

| | |
|---|---|
| STATE OF IDAHO, | ) |
| | )   **2014 Opinion No. 51** |
|     **Plaintiff-Respondent,** | ) |
| | )   **Filed: July 3, 2014** |
| v. | ) |
| | )   **Stephen W. Kenyon, Clerk** |
| HEIDI H. SWENSON, | ) |
| | ) |
|     **Defendant-Appellant.** | ) |
| | ) |

Appeal from the District Court of the Fourth Judicial District, State of Idaho, Ada County. Hon. Michael R. McLaughlin, District Judge; Hon. Kevin Swain, Magistrate.

Intermediate appellate decision of the district court affirming judgment of conviction for misdemeanor driving under the influence, <u>affirmed</u>.

Gabriel J. McCarthy, Boise, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Daphne J. Huang, Deputy Attorney General, Boise, for respondent. Daphne J. Huang argued.

_____

LANSING, Judge

Heidi H. Swenson appeals from her conviction of misdemeanor driving under the influence of alcohol. Swenson contends that the magistrate court erred at trial in allowing the State, over her objection, to establish the foundation for the admission of her breath alcohol concentration test partially through hearsay evidence. We affirm.

**I.**

**BACKGROUND**

On May 11, 2012, Swenson was contacted in her vehicle by Ada County Sheriff's Deputies Shaver and Walls. As the deputies spoke with Swenson, they detected the odor of an alcoholic beverage coming from the vehicle and observed that Swenson's eyes were bloodshot. The deputies conducted field sobriety tests and concluded that Swenson was intoxicated. Swenson was arrested for driving under the influence, and Deputy Shaver administered a breath

1

alcohol concentration (BAC) test on a portable device, the Lifeloc-FC20. The test results indicated breath alcohol concentrations of .191, .151, and .161.

Swenson was charged with misdemeanor driving under the influence, Idaho Code § 18-8004(1)(a). At trial, the State sought to lay a foundation for admission of the breath test results by showing compliance with the Idaho State Police's (ISP) "standard operating procedures" (SOP) for administering a breath-alcohol test. The first to testify was Deputy Shaver, a jail deputy who was in training to become a patrol deputy and was under the supervision of Deputy Walls on the day in question. Shaver testified that he administered Swenson's breath test. As to foundation for the breath test results, Shaver said that within twenty-four hours of Swenson's breath tests he conducted a "performance verification" (he called it a "calibration check") on the Lifeloc-FC20 instrument at issue. When the prosecutor moved to admit State's Exhibit 2, the printout of the breath test results, defense counsel objected that there was inadequate foundation. The magistrate court decided to conditionally admit the exhibit subject to further foundation, and allowed Shaver to testify to the test results. After further questioning of Shaver, the prosecutor sought unconditional admission of the exhibit, but the magistrate court adhered to its earlier ruling. The State then called Deputy Walls, who testified that he was present and participated equally with Shaver in all of the events at issue, but no specific further foundation for admission of the test results was elicited from Walls.

Jeremy Johnston, a forensic scientist with the Idaho State Police, was the State's third and final witness. Johnston said that he did not personally participate in the events surrounding Swenson's arrest, but that he had reviewed the contents of a performance verification log for the breath testing instrument at issue. Over a defense hearsay objection, the magistrate court allowed Johnston to testify to the contents of the log. Johnston testified that the log showed a performance verification was conducted on the day of Swenson's test, using a performance verification solution with a target value of .080. He said that he, as the alcohol discipline leader, had certified and approved the solution. Johnston further described how a performance verification is properly done and said that the performance verification results in this case--.083 and .080--were "within specifications." At the close of Johnston's testimony, the magistrate court held that the State had presented sufficient foundation for admission of the test results. Defense counsel requested the opportunity to make "more of a record" on his objections and the magistrate court's rulings, but the court denied this request stating, "There is foundation," and

"it's a simple evidentiary ruling," and "I'm not going to hear further argument on the admissibility of State's 2." The magistrate court did not state its reason for overruling Swenson's hearsay objection.

The jury returned a guilty verdict. Swenson appealed from the judgment to the district court, and the district court affirmed. This appeal followed.

## II.

## STANDARD OF REVIEW

When reviewing the decision of a district court sitting in its appellate capacity, our standard of review is the same as expressed by the Idaho Supreme Court:

> The Supreme Court reviews the trial court (magistrate) record to determine whether there is substantial and competent evidence to support the magistrate's findings of fact and whether the magistrate's conclusions of law follow from those findings. If those findings are so supported and the conclusions follow therefrom and if the district court affirmed the magistrate's decision, we affirm the district court's decision as a matter of procedure.

*Pelayo v. Pelayo*, 154 Idaho 855, 858-59, 303 P.3d 214, 217-18 (2013) (quoting *Bailey v. Bailey*, 153 Idaho 526, 529, 284 P.3d 970, 973 (2012)). Thus, the appellate courts do not review the decision of the magistrate court. *Bailey*, 153 Idaho at 529, 284 P.3d at 973. Rather, we are procedurally bound to affirm or reverse the decisions of the district court. *State v. Korn*, 148 Idaho 413, 415 n.1, 224 P.3d 480, 482 n.1 (2009).

The decision whether to admit evidence at trial is generally within the province of the trial court. A trial court's determination that evidence is supported by a proper foundation is reviewed for an abuse of discretion. *State v. Gilpin*, 132 Idaho 643, 646, 977 P.2d 905, 908 (Ct. App. 1999). Therefore, a trial court's determination as to the admission of evidence at trial will only be reversed where there has been an abuse of that discretion. *State v. Zimmerman*, 121 Idaho 971, 973-74, 829 P.2d 861, 863-64 (1992); *State v. Healy*, 151 Idaho 734, 736, 264 P.3d 75, 77 (Ct. App. 2011).

## III.

## ANALYSIS

Idaho Code §§ 18-8004(4) and 18-8002A(3) charge the Idaho State Police agency with promulgating rules prescribing standards for administration of breath alcohol content tests. *State v. Besaw*, 155 Idaho 134, 140, 306 P.3d 219, 225 (Ct. App. 2013); *Platz v. State*, 154 Idaho 960,

3

964, 303 P.3d 647, 651 (Ct. App. 2013). Although the ISP has adopted administrative "Rules Governing Alcohol Testing," *see* Idaho Administrative Code (IDAPA) 11.03.01, *et seq.*, its standards for evidentiary testing and calibration of equipment are not presented in the body of those administrative rules. Instead, IDAPA 11.03.01.014.03 (4/7/11) currently states: "Breath tests shall be administered in conformity with standards established by the department. Standards shall be developed for each type of breath testing instrument used in Idaho, and such standards shall be issued in the form of analytical methods and standard operating procedures." Also, IDAPA 11.03.01.007 states: "Alcohol Testing information is available on the internet." The ISP posts its standard operating procedures and analytical methods[1] on its website, and it amends these documents from time to time. *See Platz*, 154 Idaho at 965, 303 P.3d at 652. We have treated those documents as "rules" for purposes of judicial review because they constitute the only materials by which the ISP has acted upon the Idaho Code § 18-8002A(3) charge for the ISP to "prescribe by rule" the testing methods that are approved by the ISP and because their validity is not challenged in this case. *See Besaw*, 155 Idaho at 140-44, 306 P.3d at 225-29; *Platz*, 154 Idaho at 965, 303 P.3d at 652; *In re Hubbard*, 152 Idaho 879, 881-82, 276 P.3d 751, 753-54 (Ct. App. 2012); *In re Schroeder*, 147 Idaho 476, 479 n.3, 210 P.3d 584, 587 n.3 (Ct. App. 2009).

For the admission into evidence of a breath-alcohol test, the State must establish an adequate foundation. *State v. Utz*, 125 Idaho 127, 129, 867 P.2d 1001, 1003 (Ct. App. 1993); *State v. Uhlry*, 121 Idaho 1020, 1022, 829 P.2d 1369, 1371 (Ct. App. 1992); *State v. Bell*, 115 Idaho 36, 39, 764 P.2d 113, 116 (Ct. App. 1988). Absent expert testimony explaining why any noncompliance with one or more of the requisite ISP administrative standards and methods for administration of the test did not affect the reliability and accuracy of the test results, compliance with those standards is a foundational prerequisite to having the test results admitted into evidence. *Healy*, 151 Idaho at 737, 264 P.3d at 78; *Utz*, 125 Idaho at 129, 867 P.2d at 1003; *State v. Bradley*, 120 Idaho 566, 568, 817 P.2d 1090, 1092 (Ct. App. 1991); *Bell*, 115 Idaho at 38-40, 764 P.2d at 115-17.

---

[1]  As far as this Court has been able to discern, "analytical methods" and "standard operating procedures" refer to the same thing.

Swenson cites a number of SOP "performance verification" testing procedures specific to the Lifeloc breath testing machine that must be followed to establish foundation for admission of test results under the statutory method.[2] She asserts that this foundation was not laid because the State presented the foundational information only by inadmissible hearsay through Johnston's testimony about the entries in the performance verification log.

Whether a proper foundation has been laid to admit breath test results is a preliminary question of admissibility to be decided by the trial court under Idaho Rule of Evidence 104(a), which states, "Preliminary questions concerning . . . the admissibility of evidence shall be determined by the court." *Utz*, 125 Idaho at 129, 867 P.2d at 1003; *Uhlry*, 121 Idaho at 1022, 829 P.2d at 1371; *Bell*, 115 Idaho at 40, 764 P.2d at 117. Rule 104(a) further provides: "In making its determination [the trial court] is not bound by the rules of evidence except those with respect to privileges." By terms of this rule, the magistrate court possessed discretion to consider Johnston's hearsay testimony in determining that foundation for admission of the breath test results had been shown, and Swenson has not shown an abuse of that discretion.

We caution, however, that when inadmissible evidence is allowed, even for foundational purposes, care should be taken to ensure that a party will not be prejudiced by the jury hearing inadmissible evidence. Idaho Rule of Evidence 103(c) directs:

> In jury cases, proceedings shall be conducted, to the extent practicable, so as to prevent inadmissible evidence from being suggested to the jury by any

---

[2] The SOP version applicable at the time of Swenson's tests is entitled: "6.0 Idaho Standard Operating Procedure Breath Alcohol Testing (Revision 3 Effective 4/23/12)." It states that a performance verification is a "verification of the accuracy of the breath testing instrument utilizing a simulator and a performance verification solution." 6.0 Idaho Standard Operating Procedure, Glossary (Revision 3 Effective 4/23/2012). A performance verification solution is a "premixed ethyl alcohol solution used for field performance verifications." *Id.* A performance verification on a Lifeloc FC20 is done by attaching the solution to the instrument with a tube, and blowing into the tube through a mouthpiece until a result is obtained. *State v. Besaw*, 155 Idaho 134, 141, 306 P.3d 219, 226 (Ct. App. 2013), citing Idaho LIFELOC FC20 Reference Manual (Rev. Effective 8/20/10). Among other standards, a performance verification consists of two samples, SOP 5.1.2 (Revision 3 Effective 4/23/2012), the verification must be performed "within 24 hours before or after an evidentiary test," SOP 5.1.3 (Revision 3 Effective 4/23/2012), the simulator temperature must be between 33.5°C and 34.5°C, SOP 5.1.6 (Revision 3 Effective 4/23/2012), and the results are acceptable according to the ISP's standards if each sample falls within 10 percent above or below the particular solution's target value. SOP 5.1.5 (Revision 3 Effective 4/23/2012).

means, such as making statements or offers of proof or asking questions in the hearing of the jury.

And Idaho Rule of Evidence 104(c) states:

Hearings on the admissibility of confessions in criminal cases shall be conducted out of the hearing of a jury. Hearings on other preliminary matters in all cases shall be so conducted whenever the interests of justice require or, in criminal cases, whenever an accused is a witness, if the accused so requests.

In this case, Swenson advances no allegation of trial prejudice from the prosecutor's unusual choice to elicit the foundational evidence from Johnston rather than from Deputy Shaver, the officer who conducted the performance verification and testified before Johnston did. Nor do we perceive any prejudice. Shaver testified, albeit succinctly, that he personally conducted the performance verification within twenty-four hours of Swenson's tests, and he was thus available for defense cross-examination as to the particulars of that verification process. Indeed, the prosecutor's unusual choice to present the foundational evidence through Johnston provided Swenson a line of attack that she took advantage of, pointing out to the jury that Johnston was not present during the performance verification and thus had no personal knowledge of that to which he had testified. Under these circumstances, Swenson's only real complaint is that the foundation for admission of the breath test results was laid, in part, through the wrong trial witness, and no prejudice is evident.[3]

This circumstance differs significantly from that presented in *State v. Watkins*, 148 Idaho 418, 224 P.3d 487 (2009). In that case, the defendant was indicted for lewd conduct with a minor for allegedly having sexual contact with a six-year-old girl. A recently used condom and the child's underwear were sent to a private DNA laboratory for analysis. At trial, the State's DNA expert, over the defense's hearsay objection, was allowed to testify that, according to tests performed by an analyst at the witness's private laboratory, the defendant's DNA was in the semen on the girl's underwear and inside the condom and the girl's DNA was on the outside of the condom. The witness had not performed nor observed the DNA testing but instead relied on

---

[3] The magistrate court's procedure here was not ideal, however. The court denied Swenson's request for an explanation of the court's allowance of hearsay evidence for the foundation. Had the court given an explanation (such as reliance on I.R.E. 104(a)), the appeal to the district court and a further appeal to this Court might have been avoided. At a minimum, a better record for appellate review would have existed.

conversations with and notes prepared by her nontestifying colleague who did the testing. The analyst who actually conducted the tests did not testify. Our Supreme Court found reversible error in allowing the hearsay evidence to be presented to the jury. *Id.* at 427, 224 P.3d at 496. *Watkins* is distinguishable from the present case for several reasons. First, the application of I.R.E. 104 was not an issue in *Watkins*. The State did not raise that rule as a justification for its use of any of the hearsay evidence. Second, the hearsay testimony in *Watkins* was not used merely to lay a foundation to show that testing equipment was properly maintained; it was utilized to show that any tests were performed at all, to identify the specific location on items that were tested, to show how the items arrived at the laboratory, to show the chain of custody, and to describe every detail of the testing procedure. As the Supreme Court stated, the hearsay testimony was used to show "that Watkins' semen was found on the child's panties, and that DNA from both Watkins and the child was found on a used condom." *Id.* at 427, 224 P.3d at 494. Thus, the witness was improperly allowed to serve as a conduit for hearsay evidence bearing directly on a critical jury issue--whether sexual contact between the defendant and the child had occurred. Our Supreme Court cited this particular testimony in concluding that the error was not harmless. *Id.* Third, in *Watkins* the person who actually handled the evidence and conducted the test did not testify at all and was not available for cross-examination.

The concerns created by the hearsay testimony in *Watkins* do not arise from the foundational hearsay testimony presented in Swenson's trial. Here, the hearsay testimony was presented for a very narrow purpose, to show that the accuracy of the breath testing equipment had been verified within twenty-four hours of Swenson's breath test; it was strictly foundational evidence for introduction of the breath test results. As noted above, this hearsay information was not prejudicial and did not embrace an ultimate issue for the jury to decide.

Swenson has not shown error in the trial court's admission of hearsay testimony to lay part of the foundation for admission of her breath test results. Therefore, the district court's appellate decision affirming the judgment of conviction is affirmed.

Judge GRATTON and Judge MELANSON **CONCUR.**